

**WILMINGTON**
**RODNEY SQUARE**

**Michael S. Neiburg**
P 302.576.3590
mneiburg@ycst.com

April 9, 2026

**ELECTRONIC MAIL & HAND DELIVERY**

The Honorable Laurie Selber Silverstein
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, Delaware 19801

Re:    In re Delaware BSA, LLC, Case No. 20-10342 (LSS) – Discovery Scheduling
Dispute Re: Motion for Judicial Resolution of Payment Percentage Dispute

Dear Judge Silverstein:

Young Conaway Stargatt & Taylor, LLP ("Young Conaway") is counsel to James Patton, the court-appointed future claimants' representative (the "FCR") for the BSA Settlement Trust. The FCR writes in response to the April 7, 2026 letter [D.I. 113] (the "STAC Letter") filed by the Settlement Trust Advisory Committee (the "STAC") in connection with the *Motion of the Future Claimants' Representative for Judicial Resolution of Payment Percentage Dispute* [Case No. 20-10343, D.I. 13451] (the "Motion").[1]

The STAC contends that the FCR has not produced documents, proposed unworkable deadlines, and otherwise acted in a dilatory manner; these contentions are not supported by facts. The FCR first provided his estimation of potential future claims to the Trustee in June 2024. The FCR then provided the Trustee with an updated presentation in January 2026 after Ankura obtained claims data from the Trust. The FCR has been diligent and cooperative every step of the way, only pushing back on deadlines that would prejudice the FCR and his testifying expert, and declining to produce materials protected from disclosure by the Federal Rules of Civil Procedure (the "Federal Rules"). The dispute raised by the STAC is twofold: (1) whether the STAC and the other Parties are entitled to the preconfirmation preliminary analyses by Ankura in its capacity as consulting expert, and (2) whether the STAC should be allowed to submit a "supplemental report" regarding the Ankura Presentation (defined below)[2] (which is not the report underlying the Motion

---

[1] Although not referenced in the STAC Letter, The Honorable Barbara J. Houser (ret.), in her capacity as trustee of the BSA Settlement Trust (the "Trustee"), and Delaware BSA, LLC as Reorganized Debtor ("BSA" and together with the FCR, the STAC, and the Trustee, the "Parties") are also parties in interest to this dispute and their respective counsel have been directly involved in the Parties' discussions concerning discovery and the proposed schedule.

[2] The Motion used the terms "Initial Ankura Report" and "Revised Ankura Report" inaccurately. The Ankura Presentation is not an expert report as contemplated by Federal Rule 26(a)(2). The Ankura Presentation was a PowerPoint presentation based on historical tort-system data and proofs of claim data from the chapter 11 cases. The Ankura Expert Report, however, is a formal expert report, which relies on actual Trust data, something the FCR and

footnote cont'd on next page

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P   302.571.6600   F   302.571.1253   YoungConaway.com

The Honorable Laurie Selber Silverstein
April 9, 2026
Page 2

or Ankura's expected testimony at the Hearing) and a "supplemental objection" after the FCR files his reply.

For the reasons discussed below, the answers to those questions should be "no" because they prejudice the FCR and will not assist the Court in determining the present dispute. The FCR therefore respectfully requests that the Court deny the relief requested in the STAC Letter and enter the proposed scheduling order attached here as **Exhibit A** (the "Proposed Scheduling Order").[3]

## RELEVANT BACKGROUND

Between December 12, 2025 and February 11, 2026, the FCR and Trust worked to consensually resolve the Trustee's request to increase the Initial Payment Percentage. Despite several meetings, the FCR and Trust were unable to resolve the issue. When the Trustee declared impasse, the FCR filed the Motion, attaching the expert report (the "Ankura Expert Report") of Ankura, as required by the Settlement Trust Agreement.

Informal discussions between the FCR, Trust, and BSA with respect to a litigation schedule began the next day. The FCR, Trust, and BSA initially contemplated a March 31, 2026 hearing date, but the STAC's recently retained counsel stated it would take several weeks to get up to speed, asking for a hearing date in the first full week of May. On March 3, 2026, the Parties agreed to schedule the hearing on May 13-14. On March 9, 2026, the FCR circulated a proposed scheduling order and offered to meet and confer. That same day, the FCR also served targeted document requests on the Trustee, STAC, and BSA (collectively, the "FCR's Document Requests").

The Parties met and conferred on March 16, 2026 to discuss the proposed schedule and the FCR's Document Requests. The STAC requested Ankura's PowerPoint presentation provided to the Trustee in June 2024 (the "Ankura Presentation"), along with the underlying materials for the Ankura Presentation and the Ankura Expert Report, notwithstanding that only the Ankura Expert Report was filed in support of the Motion. The STAC did not request any preconfirmation materials. On March 17, eight (8) days after the FCR circulated the draft scheduling order, the STAC circulated a revised proposed scheduling order.

On March 20, 2026, the FCR produced the Ankura Presentation and the underlying materials for the Ankura Expert Report, and circulated a revised scheduling order. The STAC did not respond until March 25, 2026, stating that it was "fine with the edits." The same day, the STAC advised it would be serving document requests seeking the entirety of Ankura's materials, including information mentioned by the FCR in his 2021 deposition testimony and 2022 confirmation testimony regarding the estimated number of future claims (the "Preconfirmation Consulting Materials"). Despite the FCR's production of materials Ankura relied on in the Ankura

---

Ankura did not receive until December 19, 2025 (supplemented on January 7, 2026), in addition to the historical tort data. The Ankura Expert Report does not rely on the proofs of claim data.

[3] The FCR revised the proposed dates in the Proposed Scheduling Order to reflect agreement with many of the dates suggested in the STAC Letter. The FCR also revised sections 2(a), (b) and 3(a), (b) of the Proposed Scheduling Order to clarify that the Parties shall not submit expert sur-rebuttal reports and intend only to submit affirmative expert reports and/or rebuttal report(s) to any affirmative expert report(s) submitted by the FCR, Trust, STAC, and/or BSA.

The Honorable Laurie Selber Silverstein
April 9, 2026
Page 3

Expert Report, the STAC also requested Ankura's work product, coding, and models for all tables and figures in the Ankura Expert Report.  On March 27, 2026, a week after receiving the FCR's latest markup, the STAC proposed additional revisions to the scheduling order.  The FCR responded the same day, accepting many of the STAC's suggested edits and proposing revisions for others.  The FCR and the STAC, along with their respective experts, met and conferred on April 2, 2026 to discuss the materials Ankura produced and what remained outstanding.  The FCR agreed to provide Ankura's native, unlocked model underlying the Ankura Expert Report and Ankura produced that model to the STAC in the morning of April 3, 2026.[4]

**THE DISCOVERY DISPUTE**

On April 5–Easter Sunday–the STAC emailed the FCR demanding production of the Preconfirmation Consulting Materials, arguing the STAC was entitled to such information allegedly because (i) it formed the basis of the FCR's view that potentially more than 11,300 future claims exist, and (ii) the FCR testified to the use of these materials during his 2021 deposition and 2022 confirmation testimony.  **The STAC has it wrong**.  The FCR's deposition testimony relating to future claims was elicited by counsel for the Tort Claimants' Committee, and the FCR's counsel lodged objections to such questions based on the work product doctrine and protection of draft expert materials.[5]  Further, the FCR's declaration in support of plan confirmation [D.I. 9395], which was admitted as the FCR's direct testimony, contains no mention of a forecast of future claims and the FCR's confirmation hearing testimony cited by the STAC was in response to cross-examination by counsel to an insurer.[6]  **The FCR did not introduce or otherwise put the Preconfirmation Consulting Materials at issue in connection with plan confirmation**.

Further, the FCR testified that the issue of the number of future claims was not before the Court for purposes of confirmation.[7]  The FCR went on to explain that post confirmation, Ankura "would need to be involved because the implementation of the TDP and the creation of . . . an initial payment percentage is going to require very detailed work from Ankura."[8]  The FCR's testimony at the confirmation hearing is entirely consistent with the subsequent retention of Ankura beginning May 15, 2023.[9]

---

[4] On April 6, 2026, the STAC identified certain "deficiencies" with Ankura's native, unlocked model underlying the Ankura Expert Report, stating that three (3) tabs in the Excel file did not contain formulas or calculations.  This is not a deficiency.  Ankura utilized goal seeking—a common Excel optimization.  Before reproducing these materials, Ankura added formulas and calculations for every single value associated with the native, unlocked model underlying the Ankura Expert Report and further provided explanatory comment where helpful.

[5] *See* STAC Letter, Ex. 2, Nov. 30, 2021 Dep. Tr. of James Patton at 46:9–16, 47:12–19, 121:20–23.

[6] *See* Mar. 22, 2022 Hr'g Tr. [D.I. 9455] at 117:2–120:6.  Relevant excerpts of the March 22, 2022 Confirmation Hearing are attached here as **Exhibit B**.

[7] *Id.* at 121:8–122:3.

[8] *Id.* at 159:2–22.

[9] The FCR retained Ankura to, among other things, analyze claims data to estimate the indemnity of pending and future sexual abuse claims and assist with evaluating trust distribution procedures and any modifications thereto as Counsel deems necessary.  Ankura's May 15, 2023 engagement letter is attached here as **Exhibit C**.

The Honorable Laurie Selber Silverstein
April 9, 2026
Page 4

Moreover, the Preconfirmation Consulting Materials do not form the basis for the FCR's assertion in the Motion regarding the forecast of Future Abuse Claims. With respect to the Preconfirmation Consulting Materials and the Ankura Presentation, Ankura had to develop its forecast of future claims using historical tort data and proofs of claim data. The Ankura Expert Report utilizes actual Trust data. The underlying materials for the Preconfirmation Consulting Materials and the Ankura Presentation are simply not relevant.

On April 6, 2026, the FCR informed the STAC that, notwithstanding the dubious relevancy of the Ankura Presentation, the FCR would produce the native, unlocked model underlying the Ankura Presentation. That model was produced on April 8, 2026. The FCR explained that he would not produce the Preconfirmation Consulting Materials as such materials are shielded from disclosure by Federal Rules 26(b)(4)(B) and 26(b)(4)(D). The FCR stands by his position. The Preconfirmation Consulting materials are not subject to disclosure and, in any event, they are irrelevant and unnecessary for the STAC's rebuttal report, which should be limited to the opinions set forth in the Ankura Expert Report and supporting materials relied on by Ankura.[10]

## THE SCHEDULING DISPUTE

In the same April 6 email, the FCR (i) attached the Proposed Scheduling Order, (ii) addressed various requests made by the other Parties, and (iii) suggested that the STAC, Trustee, and BSA consider adjourning the hearing if they found the dates included in the Proposed Scheduling Order objectionable, noting that the FCR would not object and would continue to work with the Parties to establish a reasonable litigation schedule based on a new hearing date. In response, the STAC stated that the Parties were at an impasse. When asked on what specific issues the Parties have reached an impasse, the STAC responded by referencing its Easter Sunday email and the FCR's refusal to produce the Preconfirmation Consulting Materials.

Despite the tone of the STAC Letter, the Parties are not disputing many substantive portions of the Proposed Scheduling Order, including the method by which the Parties will present testimony at the hearing. And the Parties are not that far apart in terms of finalizing a proposed schedule. As shown in the STAC Letter at pp. 3–4, many deadlines provided in the various iterations of the proposed scheduling order were not overly contested by the Parties. Indeed, the BSA only requested an adjustment of the deadline by which the BSA's anticipated hybrid witness would submit a declaration. That issue was resolved on April 6, 2026. The below chart, as annotated, reflects the dates on which the Parties appear to agree.

| Deadlines Acceptable to the FCR[11] | |
|---|---|
| **Deadline** | **Subject** |
| March 26, 2026 | Exchange of written discovery |

---

[10] *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1001–02 (D. Del. 2013) (internal citations removed) (finding expert rebuttals that do not directly contradict the actual contents of the prior report do not qualify as proper rebuttal reports).

[11] Annotated to account for minor differences between the Proposed Scheduling Order attached as Exhibit A and the FCR's willingness to compromise with the proposed deadlines in the STAC Letter.

The Honorable Laurie Selber Silverstein
April 9, 2026
Page 5

| April 8, 2026 | Exchange responses to written discovery |
|---|---|
| April 8, 2026 | Completion of document discovery (as compared to April 9, 2026 proposed in the STAC Letter) |
| April 15, 2026 | Submission of Bates White's rebuttal expert report and underlying materials (although the FCR requested April 14, 2026) |
| April 27, 2026 | Submission of Ankura's rebuttal to the Bates White expert report (although the FCR requested April 28, 2026) |
| May 1, 2026 | STAC's, Trust's, and BSA's deadline to file an objection to the Motion (even though the FCR offered May 4, 2026) |
| May 11, 2026 | FCR's deadline to file a reply in further support of the Motion |

Only three material items remain at issue and the FCR asks the Court to assist the Parties in resolving the dispute.  First, the Trustee requested that the date to exchange fact witness declarations remain as April 20, 2026.  The FCR has suggested April 15, 2026.  The Trustee advised that the FCR's request to move up the April 20, 2026 deadline would be considered, but no response has yet been provided.  The Trustee has not provided a reason why the Trust needs so much time to prepare a declaration for facts that have existed well before the FCR's filing of the Motion.  The FCR requests that the Court set the deadline for the submission of fact witness declarations as April 15, 2026.  Second, the FCR asks that the Court set the deadline for expert depositions as May 4, 2026.

Third, the FCR objects to two substantive components of the schedule proposed in the STAC Letter, namely (1) the STAC's insistence that Bates White can submit a supplemental rebuttal expert report because the FCR allegedly "failed" to "timely" produce the underlying materials for the Ankura Presentation, and (2) the STAC's request to file a supplemental objection at some unidentified date after May 5, 2026.  Notwithstanding that the Ankura Presentation is not relevant here, the FCR timely produced the requested materials by the April 8 document production deadline.  The STAC should not be entitled to a supplemental rebuttal expert report relating to the Ankura Presentation.

The STAC's rebuttal report should be limited to addressing the Ankura Expert Report filed on February 17 with the Motion.  To the extent the Ankura Presentation has any role in this litigation, it should be relegated to deposition questions and cross-examination questions at the hearing.  Accordingly, the FCR requests that the Court deny the STAC's request to submit supplemental rebuttal reports and objections.  The briefing on the Motion should conclude with the FCR's reply.  There is no reason to allow the STAC to file a supplemental objection premised on non-existent delays in providing materials relating to the Ankura Presentation, which is not at issue.

Very truly yours,

/s/ Michael S. Neiburg
Michael S. Neiburg

Attachments