**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Case No. 20-10342 (LSS) |
| | **)** | |
| | ) | Chapter 11 |
| DELAWARE BSA, LLC,[1] | ) | |
| | ) | |
| Reorganized Debtor. | ) | **Re: Docket Nos. 139, 140 and 169** |

**SLATER SLATER SCHULMAN LLP'S RESPONSE TO NOTICE OF MOTION AND
MOTION FOR CONTEMPT – NONCOMPLIANCE WITH COURT'S JUDGMENT
(FED. R. CIV. P. 70(C)) AND FOR NONCOMPLIANCE WITH CONTRACT**

Slater Slater Schulman LLP ("SSS"), through its undersigned counsel hereby submits this response (the "Response") to Claimant T.C.'s ("T.C.") *Motion for Contempt – Noncompliance with Court's Judgment (Fed. R. Civ. P. 70(c)) and for Noncompliance with Contract* [Docket Nos. 139 and 140] (the "Motion"). In support of this Response, SSS respectfully states and alleges as follows:

**BACKGROUND**

1. Through the Motion, T.C. requests, among other relief, (i) that SSS "be [found] guilty of contempt…[ordered] [t]o pay the sum of $442,368.00[2] as damages occasioned by the [alleged] contempt…and [required compliance] with this [C]ourt's orders; (ii) the denial of any compensation owed to SSS in connection with its representation of T.C. in this matter; (iii) entry of an order requiring all future communication from SSS to T.C. be sent in accordance with the Ohio Department of Rehabilitation and Corrections ("ODRC") legal mail policy (the "Legal Mail

---

[1]   The last four digits of the tax identification number of Reorganized Debtor Delaware BSA, LLC ("Delaware BSA") are 4311. The Reorganized Debtor's mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038. On March 13, 2026, the Court entered a final decree closing the chapter 11 case of Boy Scouts of America. *See* Docket No. 13530 in Case No. 20-10343. Commencing on March 13, 2026, all motions, notices, and other pleadings relating to the Reorganized Debtors shall be filed and administered in the remaining chapter 11 case of Delaware BSA, LLC Case No. 20-10342.

[2]   It is unclear to SSS how T.C. calculated this amount of alleged damages.

Policy"), attached hereto as **Exhibit A** is a copy of the Legal Mail Policy; (iv) the termination of SSS's representation of T.C. in this matter; and (v) the penalization of SSS for its alleged refusal to adhere to the Legal Mail Policy.  Motion ¶¶ 3-4.

2.      On February 28, 2204, T.C. submitted a *Motion for New Counsel* [Case No. 20-10343 (LSS) Docket Nos. 11848 and 11849] to the Court (the "2024 Submission").

3.      On May 30, 2024, the Court entered the *Order Regarding T.C. and Slater Slater & Schulman LLP* Case No. 20-10343 (LSS) [Docket No. 12138] (the "2024 Order") directing SSS "to confer with T.C. regarding the matters raised in his motion."  2024 Order ¶ 2.

4.      After entry of the 2024 Order, SSS communicated with T.C..  Motion ¶ 12. Furthermore, attached hereto as **Exhibit B** is a true and correct redacted copy of SSS's case note detailing its compliance with the 2024 Order.  T.C. subsequently withdrew the 2024 Submission. Motion ¶ 12*; see also* Case No. 20-10343 (LSS) [Docket No. 12515].

5.      Since entry of the 2024 Order, SSS has communicated with T.C. and complied with the 2024 Order.  *See* Ex. B; *see also* Motion ¶ 15(d) (noting SSS has sent T.C. *sixty plus* legal correspondence); *id.* at ¶ 15(h) (detailing correspondence T.C. received from SSS as recently as January and February 2026).

6.      T.C. alleges the "legal mail" he received from SSS is handled as "regular mail" because of SSS's alleged failure to adhere to the Legal Mail Policy.  Motion ¶ 20.

7.      SSS submits it has communicated with T.C. recently, including a February 2026 phone call where T.C. told SSS he does not receive "legal mail" from SSS.  Subsequent to this phone call, SSS resent its prior communications pursuant to the instructions T.C. provided SSS.

8.      Since its receipt of the Motion, SSS has continued its attempts to communicate with T.C., including attempts to schedule a phone call with T.C..  Recently, ODRC advised SSS that

T.C. is responsible for initiating such a call, and SSS cannot schedule a call with T.C.. Attached hereto as **Exhibit C** is a true and correct copy of the communication SSS received from ODRC.

9.    Upon information and belief, T.C.'s claim has been allowed by the BSA Settlement Trust in the amount of $1,105,920.

## ARGUMENT

10.    Although it is unclear precisely what relief T.C. seeks, the Motion is jurisdictionally improper and substantively deficient. As a result, the Court should deny the Motion as it pertains to SSS.

### A. SSS is Not in Contempt of the 2024 Order and T.C. Has Not Alleged Any Facts or Damages Which Would Entitle Him to the Relief Sought

11.    First, with respect to the T.C.'s request that SSS be found in contempt of the 2024 Order, T.C.'s own admissions show SSS complied with the 2024 Order and is not in contempt of the 2024 Order. *See* Motion ¶ 15(d) (noting SSS has sent T.C. *sixty plus* legal correspondence); *see also id.* at ¶ 15(h) (detailing correspondence T.C. received from SSS as recently as January and February 2026). In order for a party to be liable for civil contempt, a movant must plead "(1) that a valid order of the court existed; (2) that the party in contempt had knowledge of the order; and (3) that the party in contempt disobeyed the order." *In re EHT US1, Inc.*, 633 B.R. 223, 233 (Bankr. D. Del. 2021). SSS does not dispute the existence or knowledge of the 2024 Order, but does dispute it disobeyed the 2024 Order. *See* Ex. B. SSS appreciates, and frankly shares, T.C.'s frustration with the communication policies imposed by ODRC, but by T.C.'s own admission, SSS has been in communication with T.C. and complied with the 2024 Order. Motion at ¶ 15(h). SSS provided T.C. updates via mail regarding his claim as they became available, including as recently as January and February 2026, in compliance with the 2024 Order. *Id.* at ¶¶ 15(d), (h). SSS's

3

communications with T.C. show it did not disobey the 2024 Order.  *See* Ex. B.  Therefore, T.C. is unable to meet his burden to establish SSS is in contempt of the 2024 Order.

12. As T.C. acknowledged in the Motion, there appears to be a significant delay in T.C.'s receipt of correspondence from SSS.  This likely has resulted in a further delay of SSS's attempts to communicate with T.C. since its receipt of the Motion.  Furthermore, SSS is unable to schedule a call with T.C. to try and address his concerns raised in the Motion, only further straining the relationship.  *See* Ex. C.  SSS's review of its phone records do not show any record of T.C. attempting to call SSS, despite his claims that he made nearly 100 unanswered calls to SSS in early 2026 alone.  Motion ¶ 23.  SSS invites T.C. to call and identify himself to try and address the concerns raised in the Motion.  To the extent T.C. called SSS's main phone number and did not leave a message with information regarding his concerns or provide information to schedule a call back, SSS cannot be expected to return an unknown phone call or return a call it cannot place under the ODRC's policy.  Nonetheless, these recent communication challenges are insufficient to allege SSS disobeyed the 2024 Order.

13. Second, T.C.'s assertion that alleged "dubious" information not previously disclosed would have changed the outcome of the 2024 Order and should result in increased proposed penalties against SSS is simply incorrect.  The 2024 Order makes clear that this Court does not have the authority to grant the relief requested in the 2024 Submission.  *See* 2024 Order ("No authority permits the Court to terminate a contract between a claimant in a bankruptcy case and his counsel").  This Court still does not have the authority to grant T.C.'s request to terminate SSS's representation.  To be clear, SSS remains committed to assisting T.C. with his claim, and hopes to resolve the communication issues referenced in the Motion.  Accordingly, to the extent T.C. still wishes to terminate SSS's representation, he should follow the BSA Settlement Trust

4

procedures to terminate his representation, and this Court still cannot terminate SSS's representation of SSS.

14. Third, T.C. fails to explain how he suffered any damages, why SSS should be liable in the amount of $442,368.00, or why the compensation owed to SSS under the terms of its engagement letter should be denied. Motion ¶ 3(a). T.C. does not, and cannot, provide any factual support for any claim that SSS's actions impose a liability against SSS for the value of T.C.'s claim against the Debtors in these bankruptcy cases. In fact, T.C.'s claim has been allowed by the BSA Settlement Trust, and T.C. cannot and does not allege any damages which would result in any liability against SSS. Moreover, T.C. does not allege any facts to support his request for the denial of compensation owed to SSS under the terms of its engagement letter. Therefore, T.C.'s request for the imposition of additional monetary penalties against SSS and the denial of the compensation owed to SSS under its engagement letter should be denied.

15. Fourth, with respect to T.C.'s contention that SSS's alleged failure to adhere to the Mail Policy resulted in the violation of T.C's privacy rights under applicable privacy laws, including Ohio Revised Code Annotated § 2930.07, T.C. also fails to allege facts to support such a claim. Ohio Rev. Code Ann. § 2930.07(D)(1)(a)(i) provides in pertinent part that "[o]n written request of the victim…all case documents related to the cases or matters specified by the victim by the entity to whom the victim…submitted the request shall be redacted prior to public release pursuant to [R.C. § 149.43]". *Id.* Ohio Rev. Code Ann. § 149.43 applies to the public disclosure of case documents, and does not apply to the inadvertent disclosure of confidential information. Any alleged disclosure of confidential information, which T.C. does not allege with any particularity to support that any such disclosure occurred, does not constitute a public release of T.C.'s alleged confidential information under Ohio Rev. Code Ann. § 2930.07. Therefore, T.C. has

not alleged any facts to support the claim that SSS violated Ohio Rev. Code Ann. § 2930.07 and T.C. is not entitled to any relief with respect to such claim.

16.    Fifth, with respect to T.C.'s contention that SSS's alleged failure to adhere to the Mail Policy violated applicable federal privacy laws through the alleged inadvertent disclosure of juvenile records, T.C.'s reliance on *United States v. Under Seal* is misguided.  853 F.3d 706 (4th Cir. 2017).  That case addressed a party's right to privacy with respect to the unauthorized disclosure of juvenile delinquency proceeding records.  *Id.* at 727.  Here, there are no allegations that any inadvertent disclosure was an unauthorized disclosure of a juvenile delinquency record. Accordingly, T.C. has also failed to allege any violation of an applicable federal privacy law, and T.C. is not entitled to relief with respect to such claim.

**B. SSS Has Not Violated the Delaware Lawyers' Rules of Professional Conduct**

17.    T.C. has also not alleged any facts to support his claims that SSS violated Delaware Lawyers' Rule of Professional Conduct (the "Delaware Professional Rules") 1.3, 1.6(a), 1.6(c), and 5.5(a).

18.    First, with respect to T.C.'s claim that SSS violated DE Professional Rule 1.3 regarding diligence, DE Professional Rule 1.3 requires an attorney to act with "reasonable diligence and promptness in representing a client." Del. Lawyers' Rules of Prof'l Conduct R. 1.3. As evidenced by SSS's more than sixty communications with T.C., as acknowledged by T.C., and SSS's numerous attempts to communicate with T.C. upon receipt of the Motion, SSS has acted diligently in its representation of T.C..  *See* Exs. B, C; *see also* Motion ¶ 15(d).  In fact, SSS's diligent representation of T.C. resulted in the allowance of his claim in the amount of $1,105,920 and, upon completion of the waiver forms already received by T.C., will result in T.C.'s receipt of a distribution.  Accordingly, SSS fulfilled its obligations under Delaware Professional Rule 1.3.

19.     Second, with respect to Delaware Professional Rules 1.6(a) and 1.6(c), the applicable Delaware Professional Rules mandate that an attorney "shall not reveal information relating to the representation of a client unless the client gives informed consent" and that "[a] lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of…information relating to the representation of a client."  *See* Del. Lawyers' Rules of Prof'l Conduct R. 1.6(a), (c).  T.C. alleges SSS violated these provisions of the Delaware Professional Rules by its alleged failure to adhere to the Mail Policy.  T.C. fails to provide any information detailing any specific disclosures of confidential information which resulted from such alleged failures.  Instead, T.C. generally alleges SSS did not comply with the ODRC Mail Policy because it allegedly did not obtain a new control number "for each piece of legal correspondence" which may have resulted in the inadvertent disclosure of confidential information.  Motion ¶¶ 15(d), 20. It is unclear to SSS that such a disclosure occurred.

20.     ODRC's Legal Mail Policy requires ODRC staff to contact the sender of legal mail containing an expired control number and provides that they "should be mindful that a control number may expired because of USPS delays... [and] is not conclusive evidence that legal mail is…regular mail."  Ex. A § VI.A.6.  By T.C.'s own admission, the alleged photocopying of his "legal mail" from SSS by ODRC staff which may have resulted in the inadvertent disclosure of confidential information is because of the "illegal copying and handling" of T.C.'s mail, not SSS's actions.  To the extent T.C. received legal mail with an expired control number, ODRC should have followed its procedures for withholding "legal mail".  The Mail Policy does not contemplate treating "legal mail" as "regular mail" without providing T.C. the opportunity to appeal such designation, and should not have resulted in the potential inadvertent disclosure of T.C.'s correspondence from SSS.  *See* Ex. A § IV.C.  To SSS's knowledge, it has complied with the Mail

Policy, and it relied on ODRC's adherence to its own Mail Policy to avoid an inadvertent disclosure of T.C.'s confidential information. Any improper handling of T.C.'s correspondence by ODRC staff and other inmates, in violation of the Mail Policy, is not an inadvertent disclosure for which SSS should be required to make reasonable efforts to avoid. Accordingly, SSS complied with its obligations under Delaware Professional Rule 1.6.

21.    Third, SSS did not violate Delaware Professional Rule 5.5(a). Delaware Professional Rule 5.5(a) provides "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist in another in doing so." Del. Lawyers' Rules of Prof'l Conduct R. 5.5(a). For the foregoing reasons, T.C. has not alleged any facts which support his claims that SSS violated the Delaware Professional Rules. Accordingly, SSS has not practiced law in Delaware in violation of the Delaware Professional Rules and it has fulfilled its obligations under Delaware Professional Rule 5.5(a).

22.    For the foregoing reasons, T.C. is not entitled to the relief sought in the Motion and the Motion, as it pertains to SSS, should be denied.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 28, 2026
     Wilmington, DE

Respectfully submitted,
**COLE SCHOTZ P.C.**

By: */s/ Melissa M. Hartlipp*
Justin R. Alberto (No. 5126)
Melissa M. Hartlipp (No. 7063)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
mhartlipp@coleschotz.com

- and -

**SLATER SLATER SCHULMAN LLP**
Jonathan E. Schulman (admitted *pro hac vice*)
445 Broad Hollow Road, Suite 419
Melville, New York 11747
Telephone: (631) 420-9300
Facsimile: (212) 922-0907
jschulman@sssfirm.com

*Counsel to Slater Slater Schulman LLP*