**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,** | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 161, 171** |

**RESPONSE OF BAILEY COWAN HECKAMAN PLLC IN OPPOSITION TO
CLAIMANT A.S.'S EMERGENCY MOTION TO VOID
ATTORNEY LIEN AND ORDER IMMEDIATE PAYMENT**

Bailey Cowan Heckaman PLLC ("BCH" or the "Firm"), by and through its undersigned counsel, respectfully submits this Response in Opposition to the Emergency Motion to Void Attorney Lien and Order Immediate Payment [D.I. 161] (the **"Motion"**) filed pro se by former client A.S. ("Mr. A.S." or "Claimant") on April 16, 2026. For the reasons set forth below, the Motion is without merit and should be denied in its entirety. The attorneys' lien—which was submitted to the Scouting Settlement Trust (the "Trust") by BCH on February 10, 2026 pursuant to Trust procedures—is valid, was filed in accordance with the procedures established by the Scouting Settlement Trust (the "Trust"), and should remain in place pending resolution of the fee dispute through the mechanisms provided by the Trust and the parties' contractual arbitration agreement. In support of this Response, BCH respectfully states as follows:

**I.  PRELIMINARY STATEMENT**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038. On March 13, 2026, the Court entered a final decree closing the chapter 11 case of Boy Scouts of America. *See* Docket No. 13530 in Case No. 20-10343. Commencing on March 13, 2026, all motions, notices, and other pleadings relating to the Reorganized Debtors shall be filed and administered in the remaining chapter 11 case of Delaware BSA, LLC Case No. 20-10342.

Mr. A.S. retained BCH in October 2020 to represent him as a sexual abuse claimant in the above-captioned Chapter 11 cases. Over the course of approximately five years, BCH performed substantial legal services on Mr. A.S.'s behalf, including, but not limited to: filing a timely Proof of Claim; litigating alongside bankruptcy professionals and local counsel; satisfying all court-imposed deadlines; and finalizing Mr. A.S.'s Trust Claim Questionnaire for timely submission. As a direct result of BCH's efforts, the Trust awarded Mr. A.S. a Proposed Allowable Claim Amount (the "PACA") of $1,555,200.00.

The Motion rests on three arguments: (i) an alleged "discrepancy" in fees; (ii) an allegation that Mr. A.S. signed his Closing Statement Acknowledgment under duress; and (iii) a challenge to the validity of BCH's attorney's lien. Each argument fails as a matter of fact and law. BCH addresses each in turn below.

Preliminarily, Mr. A.S. **never served BCH with a copy of his emergency motion**. BCH received notice in the U.S. Mail today, April 28, that the motion was before the Court and that BCH's response was due today.

## II.   ARGUMENT

### A.   THERE IS NO FEE DISCREPANCY.

The central claim in the Motion—that BCH improperly withheld 50% of Mr. A.S.'s initial distribution—is factually false and reflects a fundamental misunderstanding of the fee and expense structure to which Mr. A.S. agreed in writing before representation began.

#### 1.   *The Power of Attorney and Retainer Agreement (Exhibit A)*

On October 16, 2020, Mr. A.S. executed a Power of Attorney and Retainer Agreement (the "POA") with BCH. That agreement clearly disclosed, and Mr. A.S. agreed to, the following material terms: (i) a contingency fee of forty percent (40%) of the gross amount of any recovery;

2

and (ii) reimbursement of all reasonable and necessary expenses advanced by the Firm on Mr. A.S.'s behalf. The POA further specified that such expenses "include, but are not limited to, filing fees, claims submission fees and costs, expert fees and expenses, investigator fees and expenses, depositions, postage, couriers, medical lien resolution, bankruptcy resolution, probate, medical records and evaluations, [and] certain tasks performed by third-party vendors where determined by Attorneys to be reasonable and necessary for the success of the Client's Case." The POA also disclosed that "common benefit expenses—i.e., those expenses that benefit more than one client's Case—are routinely shared by more than one claimant and shall be deducted from the client's recovery in an equitable, ethical, and reasonably proportionate manner."

Thus, Mr. A.S.'s fee arrangement was a 40% contingency plus expenses—not a flat 40% of the total recovery. This is a standard, customary, and ethical fee-and-expense arrangement in contingency fee litigation.

### 2. The 10% Expense Holdback Was Not Additional Attorneys' Fees (Exhibit B).

When the Trust distributed Mr. A.S.'s initial payment of 1.5% of his PACA, or $23,328.00, BCH applied the agreed-upon fee and expense structure as follows: $9,331.20 (40%) was deducted as contractual attorneys' fees; $2,332.80 (10%) was reserved as a partial expense holdback; and $11,664.00 was paid to Mr. A.S. as his net distribution. The $2,332.80 was not additional attorneys' fees. It was a temporary holdback for anticipated case expenses—specifically, Mr. A.S.'s individual case-specific expenses and his pro-rata share of common benefit expenses—that could not yet be fully calculated.

### 3. Common Benefit Expenses Are a Well-Established Feature of Mass Tort Litigation.

Common benefit expenses are a well-established feature of mass tort and multidistrict litigation. They are costs incurred for the benefit of all claimants in a litigation, not just a single

client.  Here, BCH expended tens of thousands of dollars in common benefit expenses on behalf of its BSA bankruptcy clients over the five-year course of this litigation, including for Mr. A.S. Mr. A.S.'s proportional share of those expenses could not be finalized at the time of his initial distribution because the Trust had not yet completed all PACA determinations for BCH's other clients, which is necessary to allocate common benefit expenses on a pro-rata basis. This is precisely what was disclosed to Mr. A.S. in both his POA and his Closing Statement.

4.  *Mr. A.S. Agreed to the Holdback in Writing (Exhibit C).*

The Closing Statement dated October 6, 2025, contained an "Important Disclosure Regarding Case Expenses and Your Net Payment Amount" section that explained, in plain terms, the nature and purpose of the 10% expense holdback. By signing his Closing Statement Acknowledgment and the Scouting Settlement Trust Award Acceptance Form on October 9, 2025, Mr. A.S. expressly acknowledged and agreed that: (i) his attorneys had incurred both case-specific and common-benefit expenses on his behalf; (ii) he was liable for his case-specific expenses and his pro-rata share of common-benefit expenses; (iii) those amounts could not be finalized due to incomplete final awards data from the Trust; (iv) his attorneys had accordingly assessed a 10% expense holdback against his current distribution; and (v) he understood and approved of the distribution as presented.

5.  *All Amounts Owed Were Promptly Paid Following Termination (Exhibit D).*

After Mr. A.S. terminated BCH on January 24, 2026, the Firm promptly completed all accounting it was able to perform. On January 27, 2026, BCH prepared a Supplemental Closing Statement, which deducted $1,007.94 in documented case-specific expenses from the $2,332.80 holdback and refunded the remaining balance of $1,324.86 to Mr. A.S. via FedEx Priority Overnight. Mr. A.S. received and cashed that refund check on January 29, 2026. Critically, BCH

was unable to charge Mr. A.S. for any portion of the common benefit expenses the Firm incurred on his behalf—expenses that BCH believes may exceed the holdback amount, or at least dimmish the amount refunded—because those expenses remain indeterminable. Mr. A.S. ultimately did not contribute any money toward anticipated common benefit expenses.

In sum, there is no "discrepancy" in funds. The $2,332.80 was not misapplied. The fee was 40%; the holdback was for expenses; and Mr. A.S. agreed to the arrangement in writing before receiving his distribution.

**B.    THE CLOSING STATEMENT ACKNOWLEDGMENT WAS NOT SIGNED UNDER DURESS.**

Mr. A.S. alleges that "a representative of Mr. Cowan's office, Alexis Brown, informed me that my funds would not be released unless I signed for a higher percentage," and that he was "indigent and facing extreme financial hardship at the time." This claim is unsupported and fails for the following reasons.

*1.  Standard Firm Practice Applied Uniformly.*

It is BCH's standard practice to require every client to sign a Closing Statement Acknowledgment and Award Acceptance Form (Exhibit C) before releasing settlement funds. This practice is applied uniformly to all clients and is not a mechanism for extracting additional fees. The Award Acceptance Form expressly states that the client is "signing this document and returning it to my attorneys of my own free will" and acknowledges "total satisfaction with my award and the work performed by all my attorneys on my case." (Exhibit C.)  Mr. A.S. signed this form electronically on October 9, 2025, at 2:15 p.m. EDT.  (*Id.*)

*2.  Mr. A.S. Never Communicated Financial Distress to the Firm Before Signing the Acknowledgment.*

At no time before he signed the Closing Statement Acknowledgment did Mr. A.S. communicate to BCH that he was under financial distress or that he felt pressured to sign the documents. As BCH noted in its prior correspondence to Mr. A.S., "It is unfortunate that you did not communicate that economic duress to us so that we could perhaps discuss arrangements to help you financially or otherwise." Mr. A.S.'s claims of duress surfaced only months after signing, in the context of his January 2026 complaints—not at the time of the alleged coercion.

### 3. *No Funds Were Conditioned on Agreement to Pay Additional Fees.*

BCH never conditioned the release of Mr. A.S.'s settlement funds on his agreement to pay additional attorneys' fees or any amount beyond what was disclosed in his POA and Closing Statement. The holdback was for expenses—not fees. The Closing Statement clearly labeled the deduction as "PARTIAL EXPENSES HOLDBACK (10%)" and the disclosure section explained its purpose in detail. No representation was made that Mr. A.S. was "signing for a higher percentage" of attorneys' fees.

## C.   BCH'S TERMINATION WAS WITHOUT CAUSE AND THE ATTORNEY'S LIEN IS VALID.

Mr. A.S. asserts that he "fired Mr. Cowan for cause on January 23, 2026." BCH contests this characterization. Regardless, whether the termination was "for cause" or not, BCH's lien rights are protected under the parties' contractual agreement and applicable law.

### 1. *All Accounting Has Been Fully Documented and Disclosed.*

During the representation and following its termination, BCH provided Mr. A.S. with comprehensive documentation of all fees and expenses, including: (i) the original Closing Statement and Detailed Breakdown (October 6, 2025); (ii) the Scouting Settlement Trust Award Acceptance Form (October 9, 2025); (iii) attorney Andrea McGinnis's detailed email of January 12, 2026, itemizing $1,007.94 in case-specific expenses; (iv) Mr. Cowan's detailed explanatory

email of January 15, 2026; and (v) the Supplemental Closing Statement of January 27, 2026, among other correspondence with Mr. A.S..

### 2.  Mr. A.S. Raised No Concerns About the Holdback Until January 2026.

Mr. A.S. signed the Closing Statement Acknowledgment on October 9, 2025, accepted and deposited his settlement check, and raised no questions or concerns about the 10% expense holdback until January 9, 2026—approximately three months later. BCH promptly responded to every inquiry Mr. A.S. raised. On January 12, 2026, attorney Andrea McGinnis responded by email, explaining the holdback rationale and itemizing case-specific expenses. On January 15, 2026, Mr. Cowan sent a detailed email further explaining the expense structure, the permissibility of third-party vendor charges, and the status of common benefit expense calculations. Mr. A.S. refused to accept these explanations and responded with escalating threats and hostile communications.

### 3.  BCH Promptly Accounted for All Amounts Upon Termination.

Upon Mr. A.S.'s termination of BCH on January 24, 2026, the Firm promptly completed all accounting it was able to perform. On January 27, 2026—just three days later—BCH prepared the Supplemental Closing Statement (Exhibit D) and sent Mr. A.S. a refund of the holdback balance of $1,324.86 via FedEx Priority Overnight. BCH was unable to charge Mr. A.S. for common benefit expenses the Firm incurred on his behalf because those expenses remain indeterminable until the Trust completes all PACA determinations for BCH's clients.

### 4.  The Lien Was Filed in Accordance with Trust Procedures.

The attorney's lien was filed on February 10, 2026, using the Scouting Settlement Trust's Attorney Lien Notification Form, in accordance with the procedures established by the Trust for situations where a client terminates a firm after legal services have been rendered—after BCH

received Mr. A.S.'s "Maroon Form"[2] on January 28, 2026. The Trust's own instructions provide that: (i) the Trust places a temporary hold on payments to the former client upon receiving an asserted attorney lien notification; (ii) the Trust does not assist in the resolution of asserted attorney liens, as this is a dispute between the former attorney and the former client to be resolved between themselves; and (iii) the Trust retains its hold on payments until the former attorney and former client notify the Trust that the asserted lien has been resolved in whole or in part.

BCH followed these procedures precisely. The lien was filed within the required timeframe. A copy of the POA was provided. The form was completed in full and signed by Mr. Cowan. BCH asserts a valid lien against all settlement proceeds payable to Mr. A.S. by the Trust for 40% of the gross Trust recovery (i.e., 40% of the PACA of $1,555,200.00), equating to a maximum fee of $622,080.00, less previously paid fees of $9,331.20, for a net maximum fee of $612,748.80, plus all reimbursable expenses not yet reimbursed.

### 5. *The Lien Should Remain in Place Pending Arbitration or Other Procedure Imposed by the Trust.*

The parties' POA contains a binding arbitration clause, which provides that "all disputes, controversies, claims or demands arising out of or relating to interpretation, enforcement or alleged breach of this contract shall be submitted to binding arbitration under the Texas Arbitration Act, which shall only be brought in Harris County, Texas," and shall proceed in accordance with the rules of the American Arbitration Association. BCH's lien should remain in place pending resolution of the fee dispute through binding arbitration as provided in the parties' agreement, or through such other dispute resolution mechanism as may be appropriate and consistent with the Trust's established procedures.

---

[2] The Maroon Form is the procedure through which a claimant notifies the Trust that s/he is terminating his or her counsel.

8

### III. TIMELINE OF KEY EVENTS

The following is a concise timeline of the key events relevant to this dispute, drawn from contemporaneous records:

- **October 6, 2025.** BCH prepared Mr. A.S.'s Closing Statement disclosing a first distribution of $23,328.00 (1.5% of the PACA of $1,555,200.00), with $9,331.20 (40%) deducted for attorneys' fees, $2,332.80 (10%) reserved as a partial expense holdback, and $11,664.00 paid as Mr. A.S.'s net share.

- **October 9, 2025.** Mr. A.S. electronically signed the Scouting Settlement Trust Award Acceptance Form and Closing Statement Acknowledgment at 2:15 p.m. EDT, expressly agreeing to the fee and expense breakdown and acknowledging his satisfaction with the handling of his claim.

- **January 9, 2026.** Mr. A.S. emailed BCH for the first time disputing the 10% expense holdback and third-party charges, approximately three months after signing the Closing Statement and receiving his funds.

- **January 12–27, 2026.** Mr. A.S. sent a series of hostile and threatening communications to BCH, including emails to Firm partners, the State Bar of Texas, and the Trust, demanding immediate wire transfer of funds, accusing the Firm of criminal misconduct under Texas Penal Code § 32.45, and threatening to involve the Houston Police Department and the Harris County District Attorney. On January 27, 2026, Mr. A.S. made thirteen hostile calls to BCH's front desk and left threatening voicemails.

- **January 20, 2026.** Mr. A.S. filed a grievance against Mr. Cowan with the State Bar of Texas, alleging misappropriation of the 10% expense holdback.

- **February 10, 2026.** BCH filed the Attorney Lien Notification Form with the Scouting Settlement Trust, preserving its right to recover fees and expenses from any future awards to Mr. A.S., in accordance with the Trust's established procedures.

### IV. CONCLUSION

The Motion is based on a fundamental misunderstanding of the fee and expense structure to which Mr. A.S. agreed in writing. There is no fee discrepancy. The 10% holdback was for

9

expenses, not additional fees. Mr. A.S. signed the Closing Statement Acknowledgment of his own free will without communicating any duress to the Firm beforehand. BCH's attorney's lien was filed in strict compliance with the Trust's established procedures and is supported by the parties' contractual agreement and applicable law.

**WHEREFORE**, Bailey Cowan Heckaman PLLC respectfully requests that the Court enter an order: (i) **DENYING** Mr. A.S.'s Emergency Motion to Void Attorney Lien and Order Immediate Payment in its entirety; (ii) **ORDERING** that BCH's attorney's lien remain in place pending resolution of the fee dispute through binding arbitration under the Texas Arbitration Act as provided in the parties' Power of Attorney and Retainer Agreement, or through such other procedures as may be consistent with the Trust's established lien resolution process; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: April 28, 2026
Wilmington, Delaware

**HOGAN♦McDANIEL**

*/s/ Daniel K. Hogan*
Daniel K. Hogan, Esquire (#2814)
1311 Delaware Avenue
Wilmington, DE 19806
Tele: (302) 656-7540
Fax: (302) 656-7599
dkhogan@dkhogan.com

*Counsel to Bailey Cowan Heckaman PLLC*

10