IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

RECEIVED

2026 MAY -8  P 12:55

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:  DELAWARE BSA, LLC,  Reorganized Debtor.

Chapter 11

Case No. 20-10342 (LSS)

Related D.I. Nos: 114/115, 261

## PRO SE CLAIMANT M.M.'S RESPONSE TO STATUS REPORT OF THE TRUSTEE

## [D.I. 261]

## INTRODUCTION

Claimant M.M., appearing pro se, respectfully submits this Response to the Status Report of the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust (the "Trustee"), dated May 5, 2026 [D.I. 261] (the "Status Report"), in advance of the May 12, 2026 Status Conference.

M.M. is an adult survivor of childhood sexual abuse inflicted upon him as a minor during his participation in Boy Scouts of America activities. He pursued his claim through every available Trust process — timely filing his Proof of Claim and Claims Questionnaire, seeking reconsideration of the Trust's determination, and providing timely notice under Article XII of the Trust Distribution Procedures ("TDP") of his intent to seek a de novo determination. At each step, M.M. has acted promptly, deliberately, and in full compliance with the applicable procedures.

**Page 2**

The Trust's Status Report raises procedural questions about the proper vehicle and venue for M.M.'s Article XII claim. M.M. submits this Response to address those questions directly, to place his position clearly on the record, and to request the Court's guidance on next steps.

## I. M.M. IS PREPARED TO FILE A PROPER TORT ELECTION LAWSUIT IN THE APPROPRIATE COURT.

The Trust contends that M.M.'s Motion for De Novo Determination is not a proper TDP Tort Election Claim because Article XII requires the filing of a lawsuit rather than a motion, and that the proper venue is either the United States District Court for the District of Delaware or Delaware Superior Court.

MM. does not dispute this reading of Article XII. His purpose in filing his Motion was to place his claim and his arguments squarely before the Court following the Trust's reconsideration decision. Now that the procedural framework has been clarified, M.M. is fully prepared to proceed by filing a proper complaint against the Trust in the appropriate court of competent jurisdiction as Article XII requires.

M.M.'s position on the merits has not changed. The arguments set forth in his Motion — including the Trust's misclassification of his tier of abuse, the improper application of aggravating and mitigating factors, and the misapplication of the statute of limitations scalin factors to a claimant domiciled at a non-U.S. military address — remain the foundation of his claim and will be presented in full in the proper forum.

## II. M.M.'S ARTICLE XII RIGHTS ARE CONFIRMED AND HIS NOTICE WAS TIMELY.

The Trust's own Status Report expressly acknowledges that M.M. "timely provided notice to the Trust of his intent" to pursue a Tort Election Claim and that "he still has the opportunity to file such a suit." Status Report at 7. M.M. respectfully asks the Court to take note of this concession.

M.M. provided his Article XII notice to the Trust on March 30, 2026. The Trust confirmed receipt. His right to proceed is preserved. M.M. respectfully requests that this Court confirm the deadline by which he must file his complaint in a court of competent jurisdiction, so that he may plan and execute his next steps with full clarity.

## III. THE MERITS OF M.M.'S CLAIM ARE SUBSTANTIAL AND WARRANT FULL LITIGATION.

The Trust's Status Report addresses only procedural questions. M.M. wishes to be unambiguous about what is at stake on the merits.

The Trust determined M.M.'s allowed claim to be $44,544. M.M.'s analysis of the applicable TDP matrix and scaling factors, applied correctly to the actual facts of his abuse and its documented lifelong consequences, yields a correct allowed claim amount of $1,012,500. The gap between those two figures reflects fundamental disagreements about tier classification, the application of aggravating factors, and the proper treatment of the non-U.S. statute of limitations

**Page 4**

scaling factor for a claimant domiciled at APO NY 09179 — a U.S. military address abroad — at the time of his abuse.

Article XII exists precisely for situations like this — where a claimant has exhausted the Trust's internal processes and still believes, with good cause, that his claim has been fundamentally undervalued. M.M. intends to avail himself fully of that right.

## IV. THE COST OF FULL TORT LITIGATION AND THE CURRENT STATE OF TRUST ADMINISTRATION BOTH WEIGH IN FAVOR OF A FAIR AND EFFICIENT RESOLUTION.

The Trust's Status Report acknowledges that the Trust's "resources are both fixed and limited" and that its stated purpose is "to provide for the just, speedy, and cost-efficient determination of the Abuse Claims." Status Report at 6. M.M. takes the Trust at its word — and respectfully submits that those principles counsel strongly in favor of a fair negotiated resolution rather than extended adversarial litigation.

The differential between the Trust's determination of M.M.'s claim and M.M.'s correct calculation is approximately $968,000. A full tort lawsuit — with discovery, depositions, motions practice, expert witnesses, and potential trial — will generate substantial legal fees payable from the Trust's fixed and limited resources. Those fees benefit no survivor. They reduce the pool of funds available to the very claimants the Trust was established to compensate.

**Page 5**

The Trust's own Monthly Program Statistics as of April 1, 2026 bear directly on any concern about precedent. Of 58,081 Matrix questionnaires submitted, 54,026 claims have already been determined — approximately 93%. Of those, 35,937 claimants have already received disbursements and accepted their awards. Those claimants have concluded their participation in the Trust process and retain no further Article XII rights. The population of Matrix claimants who still hold live Article XII rights is now a small fraction of the total.

This data directly addresses any concern about M.M.'s claim establishing a precedent that opens the door to a flood of similar claims. The floodgate the Trust might fear is, by the Trust's own statistics, already almost entirely closed. Resolving M.M.'s claim fairly does not open it.

M.M. has no interest in protracted and expensive litigation for its own sake. He has a straightforward interest in receiving the compensation to which he is correctly entitled under the TDP. If the Trust genuinely shares the goal of just, speedy, and cost-efficient resolution it articulates in its own governing documents, both parties have a mutual interest in exploring whether this matter can be resolved fairly without the cost and delay of full tort litigation. M.M. is open to that conversation.

## V.  M.M. REQUESTS THE COURT'S GUIDANCE AND A REASONABLE PERIOD TO PROCEED.

M.M. is actively in the process of retaining legal counsel with experience in BSA Trust Tort Election Claims and is pursuing that engagement with urgency.

**Page 6**

M.M. respectfully requests that at the May 12, 2026 Status Conference, this Court:

(1)  Confirm that M.M.'s Article XII rights remain intact based on his timely notice of March 30, 2026;

(2)  Identify and confirm the applicable deadline by which M.M. must file a complaint in a court of competent jurisdiction to preserve his Tort Election Claim;

(3)  Afford M.M. a reasonable period of not less than sixty (60) days from the date of the Status Conference to retain counsel and file a proper complaint in the appropriate court; and

(4)  Provide such other guidance as the Court deems appropriate to ensure M.M. is able to exercise the Article XII rights he has properly invoked.

M.M. has pursued this matter diligently and in good faith at every stage. He is entitled to the full opportunity that Article XII provides — to have his abuse claim litigated on its merits before a court of competent jurisdiction. He asks only for the chance to do exactly that.

## CONCLUSION

For the foregoing reasons, M.M. respectfully requests that this Court confirm the preservation of his Article XII rights, clarify the applicable filing deadline, and afford him a reasonable period to retain counsel and file a proper Tort Election Claim complaint in the court of competent jurisdiction identified by the Court.

Dated: May 7, 2026

Respectfully submitted,



Pro Se Claimant | Claim No. SST

May 7th, 2026

**CERTIFICATE OF SERVICE**

RECEIVED

2026 MAY -8 P 12: 55

I hereby certify that on May 7, 2026, I caused a true and correct copy of the foregoing

Response to be served upon the following parties via email and FedEx overnight delivery:

**Court:**

Clerk of Court, U.S. Bankruptcy Court, District of Delaware

lora_johnson@deb.uscourts.gov — cacia_batts@deb.uscourts.gov

824 Market Street, 3rd Floor, Wilmington, DE 19801  (FedEx Overnight)

Mark T. Hurford, Esq. — A.M. Saccullo Legal, LLC — mark@saccullolegal.com

Kami E. Quinn, Esq. — Gilbert LLP — quinnk@gilbertlegal.com



Date:

*May 7th, 2026*