**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DELAWARE BSA, LLC, | Case No. 20-10342 (LSS) |
| Debtors.[1] | **Objection Deadline: July 6, 2026 @ 4:00 pm**<br>**Hearing Date: July 24, 2026 at 10:00 am** |

**MOTION OF THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY**
**AS TRUSTEE OF THE BSA SETTLEMENT TRUST, FOR**
**ENTRY OF AN ORDER ENFORCING THE PLAN AND CONFIRMATION ORDER**

The Honorable Barbara J. Houser (Ret.) (the "Trustee"), in her capacity as trustee of the BSA Settlement Trust (the "Trust"), by and through undersigned counsel, hereby submits this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as Exhibit 1 (the "Proposed Order"), (a) enforcing the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC,* Dkt. No. 10296 (the "Plan") and the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC*, Dkt. No. 10316 (the "Confirmation Order"), and (b) directing the Settling Insurers, pursuant to Bankruptcy Code sections 105(a) and 1142(b), to execute Disbursement Instructions in the form

---

[1] The last four digits of the tax identification number of Reorganized Debtor Delaware BSA, LLC ("Delaware BSA") are 4311.  The Reorganized Debtor's mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.  On March 13, 2026, the Court entered a final decree closing the chapter 11 case of Boy Scouts of America.  *See* Dkt. No. 13530 in Case No. 20-10343.  Commencing on March 13, 2026, all motions, notices, and other pleadings relating to the Reorganized Debtors shall be filed and administered in the remaining chapter 11 case of Delaware BSA, LLC Case No. 20-10342.

consented to by the Trustee and the Reorganized Debtors.[2]    In support hereof, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Approximately $211 million in interest earned on insurance settlement proceeds escrowed pending finalization of the Confirmation Order remains gridlocked because insurers refuse to provide final release instructions to the escrow agent, as required by the insurer settlement agreements incorporated into the Plan.  The Trustee brings this Motion seeking an order requiring the four insurers with whom Debtors settled (the "Settling Insurers") to comply with the confirmed Plan and Confirmation Order.

2.      The Debtors settled the Settling Insurers' liability under their respective Abuse Insurance Policies more than four years ago for $1.66 billion (the "Settlement Payments").  The agreements evidencing these settlements (the "Insurance Settlement Agreements") were incorporated into the Plan, which the Court confirmed on April 19, 2023.  These Insurance Settlement Agreements were essential to the Plan's structure.  As the Court noted in the Confirmation Opinion, "[w]ithout these settlements, there is no Plan." *Opinion*, Dkt. No. 10136 (the "Confirmation Opinion").

3.      As the Confirmation Order was likely to be appealed, the Insurance Settlements provided that the Settlement Payments would be escrowed pending final approval of the Confirmation Order.  To implement this escrow requirement, each Settling Insurer executed an escrow agreement (the "Escrow Agreements") with the Debtors.[3]  The Insurance Settlement Agreements and Escrow Agreements all provide unequivocally that the Settling Insurers were

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3] The Escrow Agreements are attached hereto as **Exhibits A-1** (Hartford), **A-2** (Century), **A-3** (Zurich), and **A-4** (Clarendon).

required to release the escrowed Settlement Payments and any interest earned on those funds to the Trust, "minus (i) the fees of the escrow agent, and (ii) all taxes that are payable and other costs of the Escrow Account," on the date the Confirmation Order became final (or, in the case of Hartford, "as soon as practicable thereafter").[4]

4.      To effectuate this release of funds on the date the Confirmation Order became final, the Escrow Agreements required the Settling Insurers to issue to the escrow agent a written disbursement instruction ("Disbursement Instruction").  The Disbursement Instruction states, in relevant part:

> Depositor [i.e., the Settling Insurer] hereby acknowledges that a disbursement is to occur at: [time of the Release Date].
>
> Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositor hereby irrevocably instructs Escrow Agent to (i) pay all fees of the Escrow Agent in the amount of $[_____] and to its counsel in the amount of $[_____] and all taxes that are payable and all other Escrow Costs (as such term is defined in the Underlying Agreement) of the Escrow Account (all such fees, taxes, and other Escrow Costs, the "Escrow Fees"), and (ii) release all remaining balance of the Escrow Property of $_____ (the "Disbursement Amount") to the Settlement Trust as set forth in the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan") in accordance with the following wiring instruction:
>
> [Bank name]
> [Routing number]
> [Account number]
>
> The Settlement Trust and the Depositor consent to the payment of the Escrow Fees in the preceding paragraph.

Escrow Agrs., Ex. A-1.

---

[4] *See Hartford Insurance Settlement Agreement* § IV.C-D, Dkt. No. 8816-1 and attached to the Plan as Exhibit I-1, as corrected pursuant to the *Notice of Errata* filed at Dkt. No. 9694; the *Century and Chubb Companies Insurance Settlement Agreement* §§ 3–4, Dkt. No. 8907-1 and attached to the Plan as Exhibit I-2; the *Zurich Insurance Settlement Agreement* §§ 2–3, Dkt. No. 8907-2 and attached to the Plan as Exhibit I-3; and the *Clarendon Insurance Settlement Agreement* §§ 2–3, Dkt. No. 8907-3 and attached to the Plan as Exhibit I-4; Escrow Agrs. § I.3(b).

5.    In April 2023, the Settling Insurers opened escrow accounts, each providing IRS Forms W-9 with their Employer Identification Numbers ("EINs") to do so, and the Settlement Payments were placed into those escrow accounts as contemplated by the Confirmation Order. Dkt. No. 10316.  Nearly three years later, the Supreme Court denied certiorari in connection with the last appeal on January 12, 2026, and as of 12:00 a.m. on February 7, 2026, the Confirmation Order became final.  *Reorganized Debtor's Motion for Entry of Final Decree*, Dkt. No. 13454 ("Final Decree Mot."), *Final Decree (I) Closing the Chapter 11 Case Captioned In re Boy Scouts of America, Case No. 20-10343 and (II) Granting Related Relief*, Dkt. No. 13530 ("Final Decree"). On that date, the last of the conditions precedent in each Insurance Settlement Agreement occurred, and the escrowed amounts were required to be released to the Trust for distribution to survivors. Escrow Agrs. § I.3(b).

6.    The Trustee promptly sought to obtain the release of the remaining escrow account balances to the Trust.  The Settling Insurers consented to the escrow agent's release of the $1.466 billion in remaining principal Settlement Payments from the escrow accounts.[5]  But the Settling Insurers have refused to consent to the release of the remaining escrowed funds, which consist of the interest earned on the principal Settlement Payments.  As of May 31, 2026, that interest totaled approximately $211 million, and interest continues to accrue on the those remaining funds.

7.    The Settling Insurers refuse to release the remaining escrowed funds to the Trust because they have not yet determined the amount of taxes due, if any, for purposes of issuing the Disbursement Instruction.  Such refusal is in violation of the Insurance Settlement Agreements and Escrow Agreements, both of which state that the release of those funds was to occur four

---

[5] $189,871,000.00 in principal Settlement Payments had previously been released to the Trust on the Effective Date, consistent with the Settlement Agreements and the Plan.

months ago, on the date the Confirmation Order became final.  Such refusal is also in violation of the Plan, which incorporated the Insurance Settlement Agreements and was built around the funding expectations that the Settlement Payments were to provide.  Confirmation Opinion at 73.

8.      The Trustee respectfully requests that the Court exercise its authority, pursuant to Sections 105(a) and 1142(b) of the Bankruptcy Code, to enter the Proposed Order enforcing its Confirmation Order and the Plan.  Absent an order directing the Settling Insurers to execute Disbursement Instruction providing for the release of the remaining balances, the Trust will be deprived of the income earned on the Settlement Payments and will be unable to use such funds to pay survivors of abuse consistent with the Plan.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, No. 12-MC-00032 (D. Del. Feb. 29, 2012).

10.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The statutory and other predicates for the relief requested in this Motion are sections 105(a) and 1142 of title 11 of the United States Code (the "Bankruptcy Code"); Rules 1015(c), 3020(d), and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

11.     Pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT FACTUAL BACKGROUND

**I.      The Insurance Settlement Agreements and the Confirmed Plan**

12.      On February 18, 2020, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  *Complaint*, Dkt. No. 1.

13.      With the assistance of mediators, the Debtors entered into the Insurance Settlement Agreements with the Settling Insurers.  *See* Confirmation Opinion at 73.

14.      The Insurance Settlement Agreements are similar in structure and provide for, among other things:  (i) the payment by the insurer of an agreed amount on an agreed schedule to the Trust; and (ii) a complete release of the Settling Insurers from all causes of action arising out of their respective Abuse Insurance Policies.  *Id*. at 73–74.

15.      On September 8, 2022, the Court entered the Confirmation Order confirming the Plan.

16.      The Plan incorporates the Insurance Settlement Agreements, which are attached to the Plan as Exhibit I, and provides that the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' motion for approval of the compromises and settlements set forth in each Insurance Settlement Agreement.  Plan at V.S.4.  Furthermore, the Plan is structured around the funding that the Insurance Settlement Agreements were intended to provide.  Confirmation Opinion at 73.  The Confirmation Order approves the Insurance Settlement Agreements as set forth in the Confirmation Opinion.  Confirmation Order at ¶ II.K.1.

17.      The Plan became effective on April 19, 2023 (the "Effective Date").  *Notice of Errata Regarding Notice of Entry of Confirmation Order and Occurrence of Effective Date of Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of Am. and Del. BSA, LLC*, Dkt. No. 11123.  As of the Effective Date, the Trust

was formed.  The Confirmation Order became a Final Order as of February 7, 2026.  Final Decree

Mot., Dkt. Nos. 13454, Final Decree, 13530.

18.    Each Insurance Settlement Agreement provides that the Settling Insurer(s) shall pay

the applicable settlement amounts into an escrow account and that, on the date the last applicable

condition precedent occurred—i.e., the date the Confirmation Order became a Final Order—"all

income earned [on the settlement amounts] minus (i) the fees of the escrow agent, and (ii) all taxes

that are payable and other costs of the Escrow Account," shall be released to the Trust.[6]

19.    As of midnight on Friday, February 7, 2026, all of the conditions precedent

enumerated in each Insurance Settlement Agreement had occurred.  As a result, each Insurance

Settlement Agreement's Release Date (as defined in each Insurance Settlement Agreement)

occurred on Monday, February 9, 2026.

## II.    The Escrow Agreements

20.    To implement the terms of the Insurance Settlement Agreements, each Settling

Insurer entered into an escrow agreement (collectively, the "Escrow Agreements") with The Bank

of New York Mellon (the "Escrow Agent") and the Debtors, and, upon its joinder, the Trust.  On

---

[6] *See* Hartford Insurance Settlement Agreement at §§ IV.C-D; Century and Chubb Companies Insurance Settlement Agreement at §§ 3–4; Zurich Insurance Settlement Agreement at §§ 2–3; Clarendon Insurance Settlement Agreement at §§ 2–3.

Specifically, the Century/Chubb, Zurich, and Clarendon Insurance Settlement Agreements provide that the "Net Income"—defined as "all income earned [on the Settlement Payments] minus (i) the fees of the escrow agent, and (ii) all taxes that are payable and other costs of the Escrow Account"—"shall remain in the Escrow Account until the Confirmation Order shall become a Final Order (as defined in the Plan), and the other conditions precedent to the occurrence of the Release Date have occurred, on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust."  Century and Chubb Companies Insurance Settlement Agreement at § 4.b; Zurich Insurance Settlement Agreement at § 3.b; Clarendon Insurance Settlement Agreement at § 3.b.  All conditions precedent listed in the definition of "Release Date" had occurred when the Confirmation Order became a Final Order.  *See, e.g.*, Century/Chubb Settlement Agreement § 49 for the definition of "Release Date."

The Hartford Insurance Settlement Agreement similarly provides that the funds shall be released to the Trust "on, or as soon as reasonably practicable after" the Confirmation Order becomes a Final Order.  *See* Hartford Insurance Settlement Agreement at § IV.D.

information and belief, the Settling Insurers each used their own Employer Identification Number

("EIN") to open the escrow accounts into which their settlement payments were deposited.

21.     Each Escrow Agreement provides for the release of funds to the Trust consistent

with the respective Insurance Settlement Agreement.  They each append, as an exhibit, the form

of the *Funds Disbursement to Settlement Trust Instruction* (the "Disbursement Instruction") that

must be signed by the Settling Insurers, the Reorganized Debtors, and the Settlement Trust, and

delivered to the Escrow Agent on the date the Confirmation Order becomes final in order to

effectuate such release of funds to the Trust.  Escrow Agrs. § I.3.b, Ex. A.  They each provide that

the funds to be released to the Trust shall be net of "taxes that are payable and all other Escrow

Costs . . . of the Escrow Agreement."  *Id*. § I.3.b., Ex. A.[7]  And they each state that the release of

funds shall be "as set forth in the Plan."  *Id.*

22.     The Escrow Agreements provide a mechanism for reimbursing the Settling Insurers

"from time to time" during the life of the escrow account for the "actual costs of taxes on the

earnings of the Escrow Property (including interest and penalties) that is imposed upon and

---

[7] The Disbursement Instruction states:

> Depositor [i.e., the Settling Insurer] hereby acknowledges that a disbursement is to occur at: [time of the Release Date].

> Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositor hereby irrevocably instructs Escrow Agent to (i) pay all fees of the Escrow Agent in the amount of $[_____] and to its counsel in the amount of $[_____] and all taxes that are payable and all other Escrow Costs (as such term is defined in the Underlying Agreement) of the Escrow Account (all such fees, taxes, and other Escrow Costs, the "Escrow Fees"), and (ii) release all remaining balance of the Escrow Property of $_____ (the "Disbursement Amount") to the Settlement Trust as set forth in the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan") in accordance with the following wiring instruction:

> [Bank name]
> [Routing number]
> [Account number]

> The Settlement Trust and the Depositor consent to the payment of the Escrow Fees in the preceding paragraph.

payable by the [Settling Insurers] to any tax authority." *Id*. at § I.3.a. "Actual costs" means the net tax costs of the Settling Insurers after taking into account any tax benefit derived by them.

23.     To obtain such reimbursement, the Settling Insurers were required to certify to the escrow agent the amount of taxes they were obligated to pay on the interest earned. *Id*. at § I.3.a.[8] On information and belief, the Settling Insurers never sought such reimbursement or provided such instructions during the nearly four years the Settlement Payments were escrowed, despite the fact that their tax returns covering the escrowed funds' earnings would have been due yearly for 2023-forward (2022-forward in the case of Century).

### III.     The Trustee's Efforts to Obtain Release of the Funds from Escrow

24.     On February 3, 2026, anticipating the date the Confirmation Order would become final, counsel to the Reorganized Debtors sent an email to counsel to the Settling Insurers, providing the form of Disbursement Instruction consented to by the Trustee and the Reorganized Debtors, and requesting that the Settling Insurers sign such Disbursement Instruction.

25.     On information and belief, the Settling Insurers sought to delay signing the Disbursement Instruction because they had not calculated their actual costs of taxes on the earnings on the escrow property, if any, and wanted to preserve their ability to seek reimbursement of such costs from the escrow property.

---

[8] Section I.3.a states:

> *The Escrow Agent shall deliver from the Escrow Account to the Depositor, from time to time upon and pursuant to written instructions from the Depositors*, such amounts as are certified in writing by the Depositors and verified in writing by BSA (prior to the Effective Date) and the Settlement Trust (on and after the Effective Date) to be *necessary to reimburse the Depositors for the actual cost of taxes on the earnings on the Escrow Property (including interest and penalties) that is imposed upon and payable by the Depositors to any tax authority*, provided, however, that the amount reimbursed under this provision shall not exceed the Net Income of the Escrow Property (emphasis added).

26.     On February 17, 2026, counsel to the Trustee emailed a letter to each Settling Insurer and its counsel (collectively, the "February 17 Letters"), requesting that each Settling Insurer immediately sign the relevant Disbursement Instruction in the form consented to by the Trustee and the Reorganized Debtors.  The February 17 Letters are attached hereto as **Exhibits B-1** (Hartford), **B-2** (Century), **B-3** (Zurich), and **B-4** (Clarendon).

27.     Following negotiations between the parties, the Settling Insurers released to the Trust, from their respective escrow accounts, the remaining principal amount of the respective Settlement Payments, totaling approximately $1.466 billion.

28.     As of the date of this Motion, however, and after correspondence back and forth between the Trustee and the Settling Insurers, the Settling Insurers continue to refuse to consent to the release of the Remaining Balances (the interest earned) in the respective escrow accounts.  According to the Settling Insurers, no portion of the $211 million should be released to the Trustee until a determination is made as to the amount of taxes, if any, are owed and by whom any such taxes are owed, and that amount is paid out of the escrowed funds.  At the same time, they have failed to make—or seek—any determination as to who may owe what.

## RELIEF REQUESTED

29.     The Trustee seeks entry of the Proposed Order (a) enforcing the Plan and the Confirmation Order, and (b) directing the Settling Insurers, pursuant to Bankruptcy Code sections 105(a) and 1142(b), to take any and all steps necessary to execute Disbursement Instruction in connection with the remaining balances in the escrow accounts.

## ARGUMENT

I.     **The Court Has Jurisdiction to Hear This Motion**

30.     The Confirmation Order provides that "the Court retains exclusive jurisdiction over all matters arising from and relating to the Chapter 11 Cases [and] the Plan . . . to the fullest extent

10

permitted under the Bankruptcy Code."  Confirmation Order ¶ III.74.  Additionally, the Plan provides that "the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to . . . enforce and interpret the terms and conditions of the Plan, the Plan Documents . . . and any Insurance Settlement Agreements . . . [and] hear and determine any questions and disputes pertaining to, and to enforce, the Insurance Settlement Agreements."  Plan at Art. XI.C.4, 26.  The Court has jurisdiction over this Motion because it directly pertains to the enforcement of the terms of the Plan, which incorporates the Insurance Settlement Agreements, as well as the determination of disputes pertaining to the Insurance Settlement Agreements.

## II.    The Time for Release of the Escrow Funds Has Passed

31.    The Insurance Settlement Agreements provide that the escrowed funds shall be released to the Trust on the date the applicable conditions precedent occur (or in Hartford's case, "on, or as soon as reasonably practicable after" that date).  The last condition precedent occurred as of midnight February 7, 2026.  Nothing in the Insurance Settlement Agreements or the Escrow Agreements provides for any delay in the time that escrowed funds are to be finally released to the Trust beyond the satisfaction of the conditions precedent (or, in Hartford's case, a reasonable time thereafter).

32.    The Settling Insurers' failure to calculate the actual costs of taxes payable on the escrow property, and their failure to provide the Escrow Agent with written instructions with respect to such amounts necessary to reimburse the Settling Insurers, as required by § I.3.a of the Escrow Agreements, does not constitute a proper basis to hold the Remaining Balances in the escrow accounts for an interminable period.

33.    It now appears that, despite the Trustee's diligent efforts, the Trust will be deprived of the income earned on the Settlement Payments for an extended and unknown period absent an

11

Order from the Court directing the Settling Insurers to take the steps necessary to execute the Disbursement Instruction.

## NO PRIOR RELIEF REQUESTED

34.     No prior request for the relief sought herein has been made to this Court or any other court.

## NOTICE

35.     The Trustee will provide notice of this Motion to the following parties and/or their respective counsel, as applicable:   (a) the U.S. Trustee; (b) the Reorganized Debtors; (c) the Settling Insurers; and (d) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

**WHEREFORE**, the Trustee seeks entry of the Proposed Order (a) enforcing the Plan and the Confirmation Order, and (b) directing the Settling Insurers, pursuant to Bankruptcy Code sections 105(a) and 1142(b), to take whatever steps are necessary to execute Disbursement Instruction in connection with the approximately $211 million of Remaining Balances in the settlement escrow accounts.

Respectfully submitted,

Dated:  June 22, 2026
Wilmington, DE

**A.M. SACCULLO LEGAL, LLC**

*/s/ Mark T. Hurford*
Mark T. Hurford (DE Bar No. 3299)
27 Crimson King Drive
Bear, DE  19701
Telephone: (302) 836-8877
Email:  mark@saccullolegal.com

- AND -

12

**GILBERT LLP**
Kami E. Quinn (admission *pro hac vice*)
Emily P. Grim (admission *pro hac vice*)
Craig J. Litherland (admission *pro hac vice*)
Michael B. Rush (admission *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC  20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:   quinnk@gilbertlegal.com
             grime@gilbertlegal.com
             litherlandc@gilbertlegal.com
             rushm@gilbertlegal.com

- AND -

**BROWN RUDNICK LLP**
David J. Molton (admission *pro hac vice*)
Michael S. Winograd (admission *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:   (212) 209-4801
Email:   dmolton@brownrudnick.com
             mwinograd@brownrudnick.com

*Attorneys for the Honorable Barbara J. Houser (Ret.), in her capacity as Trustee of the BSA Settlement Trust*