# EXHIBIT A-1

**EXECUTION VERSION**



THIS ESCROW AGREEMENT

IS MADE AS OF THE EFFECTIVE DATE


among


THE BANK OF NEW YORK MELLON, as Escrow Agent


and


HARTFORD FIRE INSURANCE COMPANY, as Depositor


and


HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, and NAVIGATORS SPECIALTY INSURANCE COMPANY


and

THE BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC


and upon its joinder


THE SETTLEMENT TRUST


ESCROW ACCOUNT NUMBER(S)          ▮▮▮▮▮


TITLE(S) OF ACCOUNT(S)          Hartford BSA Settlement Trust

This **ESCROW AGREEMENT** (the "Escrow Agreement") is made as of April 19, 2023 (the "Effective Date" of this Escrow Agreement) by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"); Hartford Fire Insurance Company, as depositor (the "Depositor"); Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "Hartford"); and the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA").  The Depositor, Hartford and BSA are also individually referred to herein as an "Interested Party" and, collectively as the "Interested Parties".  Upon the occurrence of the date when the Plan (as defined below) goes effective (i.e., the date when the Plan's "Effective Date" occurs, as that term is defined in the Plan) (such date, the "Plan Effective Date") and written notice to the Escrow Agent thereof and the execution by the Settlement Trust of a joinder to this Escrow Agreement, in the form as attached hereto as Annex A, the BSA Settlement Trust (the "Settlement Trust") shall be a party to this Escrow Agreement and shall be an "Interested Party" as of the Plan Effective Date.  The Escrow Agent and the Interested Parties are referred to herein, collectively, as the "Parties".  All references herein to the duties and obligations of the Settlement Trust shall only apply from and after the Plan Effective Date.  Capitalized terms not otherwise defined herein shall have the definitions ascribed to such terms in (i) the Plan (as defined herein), which shall be consistent with the meanings given in the Underlying Agreement (as defined herein), or (ii) the Underlying Agreement (as defined below), which shall control in the event of any inconsistency between the definitions ascribed to such terms in the Plan and the definitions ascribed to such terms in the Underlying Agreement.  In the event of any conflict between the terms and provisions of the Underlying Agreement, on the one hand, and the terms and provisions of this Escrow Agreement, on the other hand, the Underlying Agreement shall govern and control in all respects, provided, however, the Escrow Agent's duties shall be governed exclusively by the express terms of this Escrow Agreement.

**WHEREAS**, on February 18, 2020, BSA commenced proceedings under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

**WHEREAS**, on February 15, 2022, BSA filed the notice of the executed Settlement Agreement and Release among Hartford, BSA, the Ad Hoc Committee of Local Councils of Boy Scouts of America (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely in its capacity as an ad hoc committee (the "Coalition"), and James L. Patton, Jr., the Future Claimants' Representative for the Settlement Trust identified in Article IV.G of the Plan and the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, in his capacity as such (together with any successor serving in such capacity, the "FCR") [D.I. 8816-1] (as amended, supplemented, or otherwise modified from time to time, including pursuant to the Notice of Errata filed on April 21, 2022 [D.I. 9694], the "Underlying Agreement");

**WHEREAS**, on September 6, 2022, BSA filed their *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan");

**WHEREAS**, on September 8, 2022, the Bankruptcy Court entered the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10316] (the "Confirmation Order") confirming the Plan;

**WHEREAS**, pursuant to the Underlying Agreement, BSA, Hartford, and the other parties thereto agreed that Hartford will cause certain amounts to be deposited in escrow and to be held in escrow pending their release in accordance with the Underlying Agreement;

**WHEREAS**, BSA, Hartford, and the other parties to the Underlying Agreement have agreed that Hartford will cause such amounts to be deposited in escrow by the Depositor, an affiliate of Hartford;

**WHEREAS**, it is the intention of the Escrow Agent and Interested Parties that the Settlement Trust, on the Plan Effective Date, will be joined as a party to this Escrow Agreement;

**WHEREAS**, the Escrow Agent and Interested Parties now desire to enter into this Escrow Agreement to

2

provide for and to evidence their mutual agreement with respect to this holding and maintenance of the Escrow Property (as defined herein) in escrow;

NOW, THEREFORE, in consideration of the foregoing and of the mutual agreements contained herein, and intending to be legally bound hereby, the Interested Parties hereby appoint the Escrow Agent to act as, and the Escrow Agent hereby agrees to act as, escrow agent hereunder and to hold the Escrow Property in non-interest-bearing account no. ▮▮▮▮▮▮ , titled Hartford BSA Settlement Trust (the "Escrow Account"), in accordance with and subject to the following Instructions and Terms and Conditions, and the parties hereby agree as follows:

## I. INSTRUCTIONS

1. **Escrow Property**. Subject to Section I.3 below and the conditions precedent set forth in Section II.B of the Underlying Agreement, on, or as soon as reasonably practicable after the later of (i) the Initial Payment Trigger Date (as such term is defined in the Underlying Agreement) and (ii) the execution by the Settlement Trust of a joinder to this Escrow Agreement to join as a party (and Interested Party) to this Escrow Agreement, the Depositor shall deliver $650,000,000.00 (the "Escrow Amount") to the Escrow Agent. The Escrow Amount and all income earned thereon minus (i) the reasonable and customary fees of the Escrow Agent, and (ii) all taxes that are payable and other costs of the Escrow Account, which amounts (i) and (ii) shall be paid from the amount then remaining in the Escrow Account (such income (or loss) minus such amounts for the fees, taxes and other costs set forth in (i) and (ii) of this sentence, the "Net Income"), shall remain in the Escrow Account until the dates set forth in Section I.3 below. The Escrow Amount and Net Income plus all interest, dividends and other distributions, payments and earnings thereon and proceeds thereof (collectively the "Distributions") received by the Escrow Agent, less any property and funds distributed or paid in accordance with this Escrow Agreement, are collectively referred to herein as "Escrow Property," and shall be held by the Escrow Agent in escrow and disbursed in accordance with the terms and provisions of this Escrow Agreement. Prior to the termination of this Escrow Agreement, the Interested Parties, shall not have legal title to the Escrow Property and the Escrow Property shall at all times be held by the Escrow Agent in its capacity as Escrow Agent subject to the terms this Escrow Agreement until disbursed in accordance herewith.

2. **Investment and Reinvestment of Escrow Property**.

(a)    Investment and Reinvestment of Escrow Property. During the term of this Escrow Agreement, from and after the time that the Settlement Trust is joined as a party to this Escrow Agreement, the Escrow Property shall be invested and reinvested by the Escrow Agent at the written direction of the Settlement Trust in (i) such investments that the Escrow Agent is able to hold; and (ii) accordance with the investment guidelines set forth in Schedule I (which investment guidelines have been approved by Hartford in accordance with Hartford's rights under Section IV.E of the Underlying Agreement, which provides that the investment protocol under which the Escrow Property may be invested by the Settlement Trust is subject to Hartford's reasonable approval).

(b)        Risk of Loss and Benefit of Income.  To the extent that the Escrow Property is released to the Settlement Trust, the Settlement Trust will bear all risks, and receive all Net Income, associated with any such investment of such Escrow Property released to the Settlement Trust.  Once deposited into the Escrow Account, and while held by the Escrow Agent, the Depositor shall not have any legal or equitable interest in any Escrow Property absent the occurrence of a Qualifying Event (as defined below).  No loss or failure to obtain investment returns on the Escrow Amount and Escrow Property while in the Escrow Account shall require the Depositor or Hartford to increase (i) the Escrow Amount the Depositor is depositing or has already deposited in the Escrow Account pursuant to Section I.1 of this Escrow Agreement or (ii) the Settlement Amount (as such term is defined in the Underlying Agreement).  BSA shall have no liability or obligations to Hartford, the Depositor or the Settlement Trust, the Settlement Trust shall have no liability or obligations to Hartford or the Depositor, and Hartford and the Depositor shall each have no liability or obligations to the Settlement Trust or BSA (or any other Party or Entity), as such terms are defined in the Underlying Agreement), whatsoever for any loss sustained or failure to achieve desired investment returns on the Escrow Amount and Escrow Property while in the Escrow Account, including as a result of any investment selected as indicated in the previous sentence or made pursuant to the instructions of the Settlement Trust in accordance with this Escrow Agreement, as a result of any liquidation of any investment prior to its maturity or for failure of the Settlement Trust to give the Escrow Agent instructions to invest or reinvest the Escrow Property.  The Escrow Agent shall have no liability for any loss sustained as a result of any investment, any investment made pursuant to the instructions of the parties hereto, or any liquidation of any investment prior to its maturity.  For the avoidance of doubt, the Escrow Agent shall have no liability for any losses as the result of any actions it takes in good faith pursuant to instructions it receives from an Authorized Person (as defined herein) to invest Escrow Property.

(c)        Escrow Agent Rights and Obligations.  In the absence of written instructions from the Settlement Trust as to investment of the Escrow Property, the Escrow Agent will invest such Escrow Property as set forth in Schedule I of this Escrow Agreement.  Periodic monthly statements will be provided to the Interested Parties reflecting transactions executed on behalf of the Escrow Account.  The Interested Parties will, upon written request, receive a statement of transaction upon completion of any securities transaction in the Escrow Account without any additional cost.  The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

**3. Distribution of Escrow Property**.  The Escrow Agent is directed to hold and distribute the Escrow Property in the following manner:

(a)        Depositor Reimbursement.  The Escrow Agent shall deliver from the Escrow Account to the Depositor, from time to time upon and pursuant to and in accordance with written instructions from the Depositor or Hartford, such amounts, if any, as are certified in writing by the Depositor or Hartford and verified in writing by the Settlement Trust (on and after the Plan Effective Date) to be necessary to reimburse the Depositor or Hartford for the actual cost of taxes on the earnings on the Escrow Property (including interest and penalties) or any other escrow costs certified therein that are imposed upon and payable by the Depositor and/or Hartford to any tax authority or any other Entity (as such term is defined in the Underlying Agreement).

(b)        Delivery of Escrow Property to the Settlement Trust.  Subject to the conditions precedent set forth in Section II.C of the Underlying Agreement, on, or as soon as reasonably practicable after, the Final Order Date (as such term is defined in the Underlying Agreement), the Depositor or Hartford shall provide written instructions in the form attached hereto as Exhibit A to the Escrow Agent and the Escrow Agent shall (i) pay all reasonable and customary fees, costs and expenses of the Escrow Agent (including reasonable fees, costs and expenses of its counsel) incurred in the normal course of business of carrying out all duties and obligations under the Escrow Agreement and all taxes that are payable and all other Escrow Costs (as such term is defined in the Underlying Agreement) of the Escrow Account, and (ii) release all remaining balance of the Escrow Property to the Settlement Trust.  In accordance with the Underlying Agreement, the Depositor or Hartford, at their election, may direct the Escrow Agent (by written instruction in the form attached hereto as Exhibit A) to release any portion of the Escrow Property to the Settlement Trust prior to the time of the Final Order Date (as such term is defined in the Underlying Agreement).

4

(c)      <u>Delivery of Escrow Property to Depositor</u>.  The Escrow Agent shall, upon written instruction signed by the Depositor or Hartford acting in accordance with the Underlying Agreement (a copy of such instruction shall be provided to the other Interested Parties by the Depositor and/or Hartford substantially concurrent with the transmission to the Escrow Agent) in the form attached hereto as <u>Exhibit B</u> certifying the occurrence of any one or more of the events described below (the "<u>Qualifying Events</u>"), promptly (and no later than seven (7) Business Days (as defined herein) after the date of such written instruction, unless otherwise agreed to by the Interested Parties) (i) pay all reasonable and customary fees, costs and expenses of the Escrow Agent (including reasonable fees, costs, and expenses of its counsel) incurred in the normal course of business of carrying out all duties and obligations under the Escrow Agreement and all taxes that are payable and all other reasonable costs of the Escrow Agent, and (ii) release all the remaining balance of the Escrow Property to the Depositor or Hartford in accordance with such instruction.  The following constitute Qualifying Events:

    (1)      the agreement in writing of the Interested Parties terminating this Escrow Agreement based on any of the termination events set forth in the Underlying Agreement;

    (2)      the termination of the Underlying Agreement;

    (3)      the exercise of any Specified Action (as such term is defined in the Underlying Agreement) taken by BSA; or

    (4)      a Reversal (as such term is defined in the Underlying Agreement).

(d)      <u>Termination</u>.  Upon delivery of the Escrow Property pursuant to Sections I.3(b) or I.3(c) above, this Escrow Agreement shall terminate.  Upon the taking of all actions as described by this Escrow Agreement, the Escrow Agent shall have no further obligations or responsibilities hereunder to the parties hereto or to any other person or persons in connection with this Escrow Agreement.  The Escrow Agent may dispose of any records or reports concerning the Escrow Property and/or any transactions relating to the Escrow Account in accordance with the Escrow Agent's established procedures and any applicable law and regulations.

(e)      <u>Escrow Amount Separate.</u>  The Escrow Agent shall at all times hold the Escrow Property segregated on the books and records of the Escrow Agent from all other funds and securities deposited with or held by the Escrow Agent.  The Escrow Agent shall not commingle the Escrow Property with any assets of the Escrow Agent but will hold such Escrow Property, in escrow, separate and apart from all such other assets.  The Escrow Agent shall hold and dispose of the Escrow Property only as set forth herein.  The Escrow Property shall always be maintained and disposed of by the Escrow Agent in accordance with the terms of this Escrow Agreement, and the Escrow Property shall at all times be maintained on the books of the Escrow Agent evidencing such facts.  The Escrow Amount received by the Escrow Agent under this Escrow Agreement shall not be subject to checks or drafts drawn by the Interested Parties, and the Escrow Agent shall have no right or title with respect to the Escrow Amount except as Escrow Agent under the terms hereof.  The Escrow Agent shall neither make nor permit any disbursement from the Escrow Amount except as directed in writing and as expressly provided herein.

**4. Authorized Persons**.   Each of the Interested Parties shall, on the Effective Date of this Escrow Agreement (and upon the Plan Effective Date, for the Settlement Trust), deliver to the other parties a certificate in the form of Schedule IV hereto as to the incumbency and specimen signature of at least two (2) officers or other representatives of such party authorized to act for and give and receive notices, requests and instructions on behalf of such party in connection with this Escrow Agreement (each such officer or other representative, an "<u>Authorized Person</u>").  From time to time, an Interested Party may, by delivering to the other parties a revised certificate in the form of Schedule IV, change the information previously given, but each of the parties hereto shall be entitled to rely conclusively on the then-current schedule until receipt of a superseding schedule.

**5. Facsimile/Email Instructions**.  Each of the Interested Parties hereby provides to the Escrow Agent and agrees with and accepts the authorizations, limitations of liability, indemnities, security procedure and other provisions set forth on Schedule V hereto in connection with the Escrow Agent's reliance upon and compliance with instructions and directions sent by such parties via e-mail, facsimile transmission, secure electronic transmission containing applicable authorization codes, passwords and/or authentication keys issued by the Escrow Agent (a

"Secure Platform"), or another method or system specified by the Escrow Agent as available for use in connection with its services hereunder (collectively, "Electronic Means").

**6. Addresses**.  Notices, instructions, and other communications shall be sent to the Escrow Agent and to the Interested Parties in accordance with Schedule II and Schedule III attached hereto and incorporated herein.

**7. Compensation**.

(a)    The Interested Parties agree that the Escrow Agent (or any Party, solely to the extent such Party advances expenses on the Escrow Agent's behalf) shall be reimbursed out of income generated by the Escrow Property (or if such income is insufficient, from the Escrow Property) for its reasonable out-of-pocket expenses, disbursements, and advances incurred or made by it in connection with the preparation, execution, performance, delivery, modification, and termination of this Escrow Agreement.

(b)    Notwithstanding anything to the contrary in this Escrow Agreement, with respect to any fee, expense reimbursement, indemnity or other payment to Escrow Agent, Escrow Agent shall first seek such payment from the income generated by the Escrow Property, or if such income is insufficient, from the Escrow Property. If for any reason such income and the Escrow Property is insufficient to cover such payment, the Settlement Trust shall then be responsible for such payment.

## II. TERMS AND CONDITIONS

**1. Escrow Agent's Duties.**  The duties, responsibilities and obligations of the Escrow Agent shall be limited to those expressly set forth herein, and no duties, responsibilities or obligations shall be inferred or implied. The Escrow Agent shall not be subject to, nor required to comply with, nor required to inquire as to the performance of any obligation under, any other agreement or plan between or among the Interested Parties (including the Underlying Agreement and the Plan, and with regards to Plan, including any order or determination related to the Plan) or to which any Interested Party is a party, even though reference thereto may be made herein, or to comply with any direction or instruction made pursuant to such agreement or plan from any Interested Party or any entity acting on its behalf.  The Escrow Agent shall be entitled to conclusively rely on the written direction of the Interested Parties set forth herein without determining whether such instruction complies with any term of the Underlying Agreement or the Plan.  The Escrow Agent shall not be required to, and shall not, expend or risk any of its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder.

**2. Agreement for Benefit of Parties.**  This Escrow Agreement is for the exclusive benefit of the Parties hereto and their respective successors hereunder, and shall not be deemed to give, either express or implied, any legal or equitable right, remedy, or claim to any other entity or person whatsoever.  When the Settlement Trust is formed it will be joined as a party to this Escrow Agreement.

**3. Escrow Agent's Reliance on Orders, Etc.**  If at any time the Escrow Agent is served with any judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process which in any way affects Escrow Property (including, but not limited to, orders of attachment or garnishment or other forms of levies or injunctions or stays relating to the transfer of Escrow Property), the Escrow Agent is authorized to comply therewith in any manner as it or its legal counsel of its own choosing deems appropriate; and if the Escrow Agent complies with any such judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process, the Escrow Agent shall not be liable to any of the parties hereto or to any other person or entity even though such order, judgment, decree, writ or process may be subsequently modified or vacated or otherwise determined to have been without legal force or effect.  The Escrow Agent shall give prompt written notice of any of the foregoing events or threatened events and a copy of any such judicial or administrative order, judgment, decree, writ or process (in each case if permitted by applicable law) to each of the Interested Parties, as soon as is reasonable after receipt of such order, judgment, decree, writ or process and as far in advance of compliance as possible, so that the Interested Parties are afforded an opportunity to take action before compliance in the event they object to such judgment, order, decree, writ or process.

4. **The Escrow Agent.**

(a)  The Escrow Agent shall not be liable for any action taken or omitted by it in good faith or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder in the absence of gross negligence or willful misconduct on its part.  In no event shall the Escrow Agent be liable (i) for acting in accordance with this Escrow Agreement and relying upon (and shall be fully protected in relying upon) any instruction, notice, demand, certificate or document from any Interested Party, any entity acting on behalf of any Interested Party or any other person or entity which it reasonably believes to be genuine, (ii) for any indirect, consequential, punitive or special damages, even if advised of the possibility thereof, (iii) for the acts or omissions of its nominees, correspondents, designees, agents or custodians selected by it in good faith (other than the Escrow Agent's employees), or (iv) for an amount in excess of the value of the Escrow Property.

(b)  Attachment of the Escrow Property.  As security for the due and punctual performance of any and all of the Depositor's and the Settlement Trust's obligations to the Escrow Agent hereunder, now or hereafter arising, the Depositor and the Settlement Trust, individually and collectively, hereby pledge, assign and grant to the Escrow Agent a continuing security interest in, and a lien on and right of setoff against, the Escrow Property and all Distributions thereon, investments thereof or additions thereto (whether such additions are the result of deposits by Depositor or the investment of Escrow Property or otherwise).  If any fees, expenses or costs incurred by, or any obligations owed to, the Escrow Agent hereunder are not promptly paid when due, after giving notice to the breaching Party, the Escrow Agent may reimburse itself therefor from the Escrow Property, and may sell, convey or otherwise dispose of any Escrow Property for such purpose.  The security interest and setoff rights of the Escrow Agent shall at all times be valid, perfected and enforceable by the Escrow Agent against the Depositor and the Settlement Trust in accordance with the terms of this Escrow Agreement.

(c)  Retention of Professionals.  The Escrow Agent may consult with legal counsel as to any matter relating to this Escrow Agreement, which reasonable expense shall be reimbursed from the Escrow Property (other than expenses incurred in connection with the Escrow Agent's gross negligence or willful misconduct), and the Escrow Agent shall not incur any liability in acting in good faith in accordance with any advice from such counsel.

(d)  Force Majeure.  The Escrow Agent shall not be responsible or liable for any failure or delay in the performance of its obligations under this Escrow Agreement to the extent caused, directly or indirectly, by natural disasters, fire, acts of God, strikes or other labor disputes, work stoppages, acts of war or terrorism, general civil unrest, actual or threatened epidemics, disease, act of any government, governmental authority or police or military authority, declared or threatened state of emergency, legal constraint, the interruption, loss or malfunction of utilities or transportation, communications or computer systems, or any other similar events beyond its reasonable control.  The Escrow Agent will use commercially reasonable efforts to minimize the effect of any such events.

5.  **Collections.**  Unless otherwise specifically set forth herein, the Escrow Agent shall proceed as soon as practicable to collect any checks or other collection items at any time deposited hereunder.  All such collections shall be subject to the Escrow Agent's usual collection practices or terms regarding items received by the Escrow Agent for deposit or collection.  The Escrow Agent shall not be required, or have any duty, to notify anyone of any payment or maturity under the terms of any instrument deposited hereunder, nor to take any legal action to enforce payment of any check, note or security deposited hereunder or to exercise any right or privilege which may be afforded to the holder of any such security.

6.  **Statements.**  The Escrow Agent shall provide to the Interested Parties, at least monthly statements reflecting activity in the Escrow Account for the preceding period.  No statement need be provided for periods in which no Escrow Account activity occurred.  Each such statement shall be deemed to be correct and final upon receipt thereof by the Interested Parties unless the Escrow Agent is notified in writing to the contrary within thirty (30) Business Days of the date of such statement.  A **"Business Day"** shall mean any day on which the Escrow Agent is open for business.

7. **Limitation of Escrow Agent's Responsibility.**  Except for its obligations with respect to Authorized Persons as set forth in Sections I.4 and II.8 of this Agreement, the Escrow Agent shall not be responsible in any respect for the form, execution, validity, value or genuineness of documents or securities deposited hereunder, or for any description therein, or for the identity, authority or rights of persons executing or delivering or purporting to execute or deliver any such document, security or endorsement.

8. **Notices.**  Notices, instructions or other communications shall be in writing and shall be given to the address set forth in the Schedule II (or to such other address as may be substituted therefor by written notification to the other parties).  Notices to the Escrow Agent shall be deemed to be given when actually received by the Escrow Agent's Escrow Unit.  The Escrow Agent is authorized to comply with and rely upon any notices, instructions or other communications reasonably believed by it to have been sent or given by an Interested Party or by a person or persons authorized by an Interested Party, including persons identified on Authorized Persons schedules delivered pursuant to Section I.4.  Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday, or banking holiday, such time shall be extended to the next Business Day.

9. **Indemnity.**  The Depositor and the Settlement Trust, jointly and severally, shall be liable for and shall reimburse and indemnify the Escrow Agent and hold the Escrow Agent and its affiliates, and the Escrow Agent's and such affiliates' respective directors, officers, employees, agents, successors and assignees (the "Indemnified Parties"), harmless from and against any and all claims, losses, liabilities, costs, disbursements, damages or expenses (including reasonable attorneys' fees and expenses and court costs) (collectively, "Losses") arising from or in connection with or related to this Escrow Agreement or being the Escrow Agent hereunder (including but not limited to Losses incurred by the Escrow Agent in connection with its successful defense, in whole or in part, of any claim of gross negligence or willful misconduct on its part), provided, however, that nothing contained herein shall require the Depositor and the Settlement Trust to indemnify Escrow Agent for Losses to the extent caused by its gross negligence or willful misconduct, and provided further, however, that the Escrow Agent shall seek any reimbursement and indemnity first, from the Escrow Property, and only if the Escrow Property is insufficient to satisfy such reimbursement and indemnity, second, from the Depositor and the Settlement Trust as set forth above. In the event that the Escrow Agent should breach or fail to perform any of its obligations or duties under this Escrow Agreement (subject to the standard of care set forth in Section II.4(a) and the other provisions of this Escrow Agreement), the Depositor and the Settlement Trust shall each retain any and all rights and remedies it may have under applicable law to seek compensation for any Losses it may incur as a result of, and for any other available relief with respect to, any such breach or failure to perform.

10. **Removal and Resignation of Escrow Agent; Successor Escrow Agent.**

(a)  The Interested Parties may remove the Escrow Agent at any time by giving to the Escrow Agent thirty (30) calendar days' prior notice in writing signed by the Interested Parties (the "Removal Notice").  The Escrow Agent may resign at any time by giving sixty (60) calendar days' prior written notice thereof (the "Resignation Notice").

(b)  Within ten (10) calendar days after giving the Removal Notice or receiving the Resignation Notice, the Interested Parties shall jointly agree on and appoint a successor escrow agent.  If a successor escrow agent has not accepted such appointment by the end of such thirty (30) day period, the Escrow Agent may, in its sole discretion, deliver the Escrow Property to Depositor at the address provided herein or may apply to a court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and thereafter be relieved of all further duties and obligations as Escrow Agent hereunder.  The costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceeding shall be paid from the Escrow Property, and, only if the Escrow Property is insufficient to satisfy such costs and expenses, be deemed a joint and several obligation of the Depositor and the Settlement Trust, as applicable.

(c)  Upon receipt of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor escrow agent, less the amount of fees, costs and

expenses or other obligations owed to the Escrow Agent or hold such Escrow Property (or any portion thereof), pending distribution, until all such fees, costs and expenses or other obligations are paid.

(d)  Upon delivery of the Escrow Property to Depositor, or in accordance with the instructions of a court of competent jurisdiction pursuant to subclause (b) above, or to successor escrow agent, the Escrow Agent shall have no further duties, responsibilities, or obligations hereunder.

**11.  Escrow Agent's Obligations in the Event of Ambiguities, Conflicting Claims, Etc.**

(a)  In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Escrow Agent hereunder, the Escrow Agent may, in its sole discretion, refrain from taking any action other than retain possession of the Escrow Property, unless and until the Escrow Agent receives written instructions, signed by the Interested Parties, which eliminates such ambiguity or uncertainty.

(b)  In the event of any dispute between or conflicting claims by or among the Interested Parties and any other person or entity with respect to any Escrow Property, the Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to such Escrow Property so long as such dispute or conflict shall continue, and the Escrow Agent shall not be or become liable in any way to any Interested Party for failure or refusal to comply with such conflicting claims, demands or instructions. The Escrow Agent shall be entitled to refuse to act until, in its sole discretion, either (i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of a court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting parties as evidenced in a writing satisfactory to the Escrow Agent, or (ii) the Escrow Agent shall have received security or an indemnity satisfactory to it sufficient to hold it harmless from and against any and all Losses which it may incur by reason of so acting. The Escrow Agent may, in addition, elect, in its sole discretion, to commence an interpleader action or seek other judicial relief or orders as it may deem, in its sole discretion, necessary. The costs and expenses (including reasonable attorneys' fees and expenses) incurred in connection with such proceeding shall be paid from the Escrow Property and, only if the Escrow Property is insufficient to satisfy such costs and expenses, shall be deemed, as applicable, the Depositor's and the Settlement Trust's obligation.

**12.  Governing Law; Jurisdiction; Waiver of Right to Trial by Jury.**  This Escrow Agreement shall be interpreted, construed, enforced and administered in accordance with the internal substantive laws (and not the choice of law rules) of the State of New York. Each Interested Party hereby submits to the personal jurisdiction of and each agrees that all proceedings relating hereto shall be brought in courts located within the City and State of New York. The Escrow Agent and each Interested Party hereby waives the right to trial by jury. Each Interested Party waives personal service of process and consents to service of process by certified or registered mail, return receipt requested, directed to it at the address last specified for notices hereunder, and such service shall be deemed completed ten (10) calendar days after the same is so mailed.

**13.  Amendments, Etc.**  Except as otherwise permitted herein, this Escrow Agreement may be modified only by a written amendment signed by the Escrow Agent and the Interested Parties, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged.

**14.  Remedies Cumulative.**  The rights and remedies conferred upon the Parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies. The waiver of any right or remedy hereunder shall not preclude the subsequent exercise of such right or remedy.

**15.  Representations and Warranties.**

(a) Each of the Parties represents and warrants (i) that this Escrow Agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency,

9

reorganization, moratorium or other debtor relief laws and that certain equitable remedies may not be available regardless of whether enforcement is sought in equity or at law, and (ii) that the execution, delivery and performance of this Escrow Agreement by it do not and will not violate any applicable law or regulation.

(b) Each of the Interested Parties covenants and represents that neither it nor any of its affiliates, subsidiaries, directors or officers are the target or subject of any sanctions enforced by the US Government, (including, the Office of Foreign Assets Control of the US Department of the Treasury ("OFAC")), the United Nations Security Council, the European Union, HM Treasury, or other relevant sanctions authority (collectively "Sanctions").

(c) Each of the Interested Parties covenants and represents that neither it nor any of its affiliates, subsidiaries, directors or officers will use any payments made pursuant to this Escrow Agreement, (i) to fund or facilitate any activities of or business with any person who, at the time of such funding or facilitation, is the subject or target of Sanctions, (ii) to fund or facilitate any activities of or business with any country or territory that is the target or subject of Sanctions, or (iii) in any other manner that will result in a violation of Sanctions by any person.

16. **Illegality, Etc.**  The invalidity, illegality or unenforceability of any provision of this Escrow Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

17. **Entire Agreement.**  This Escrow Agreement shall constitute the entire agreement of the Parties with respect to the subject matter and supersedes all prior oral or written agreements in regard thereto; provided that, with regards to matters (including all rights and obligations of the Parties) other than the Escrow Agent's rights, duties and protections, that this Escrow Agreement shall not supersede the Underlying Agreement.

18. **Survival of Certain Provisions.**  Sections II.8-9, II.12, II.18 and II.21-22 of this Escrow Agreement shall survive termination of this Escrow Agreement and the resignation or removal of the Escrow Agent.

19. **Headings.**  The headings contained in this Escrow Agreement are for convenience of reference only and shall have no effect on the interpretation or operation hereof.

20. **Counterparts.**  This Escrow Agreement may be executed by each of the parties hereto in any number of counterparts, each of which counterpart, when so executed and delivered, shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

21. **Certain Tax Matters.**  Except as provided in section II.4(b) above, the Escrow Agent does not have any interest in the Escrow Property but is serving as escrow holder only and having only possession thereof.  Solely if the Escrow Property is insufficient to satisfy such payment or reimbursement, the Settlement Trust shall be liable for any transfer taxes or other taxes relating to the Escrow Property incurred in connection herewith and shall indemnify and hold harmless the Escrow Agent for any amounts that it is obligated to pay in the way of such taxes. Any payments of income from this Escrow Account shall be subject to withholding regulations then in force with respect to United States taxes.  The Settlement Trust will provide the Escrow Agent with appropriate W-9 forms for tax I.D., number certifications, or W-8 forms for non-resident alien certifications, and will inform the Escrow Agent as to the proper allocation of income in respect of the Escrow Property for annual and periodic tax and other reporting purposes.  It is understood that the Escrow Agent shall be responsible for income reporting only with respect to income earned on investment of funds which are a part of the Escrow Property and is not responsible for any other reporting.

     **22. Patriot Act Compliance, Etc.**  In order to comply with laws, rules, regulations and executive orders in effect from time to time applicable to banking institutions, including those relating to the funding of terrorist activities and money laundering and the Customer Identification Program ("CIP") requirements under the USA PATRIOT Act and its implementing regulations, pursuant to which the Escrow Agent must obtain, verify and record information that allows the Escrow Agent to identify customers ("Applicable Law"), the Escrow Agent is required to obtain, verify and record certain information relating to individuals and entities which maintain a business relationship with the Escrow Agent.  Accordingly, each Interested Party agrees to provide to the Escrow Agent upon its request from time to time such identifying information and documentation as may be available for such party in order to enable the Escrow Agent to comply with Applicable Law, including, but not limited to, information as to name, physical address, tax identification number and other information that will help the Escrow Agent to identify and verify such Interested Party such as organizational documents, certificates of good standing, licenses to do business or other pertinent identifying information.  Each Interested Party understands and agrees that the Escrow Agent cannot open the Escrow Account unless and until the Escrow Agent verifies the identities of the Interested Parties in accordance with its CIP.

     **23. Shareholder Communication Act, Etc.** With respect to securities issued in the United States, the Shareholders Communications Act of 1985 (the "Act") requires Escrow Agent to disclose to the issuers, upon their request, the name, address and securities position of its depositors who are (a) the "beneficial owners" (as defined in the Act) of the issuer's securities, if the beneficial owner does not object to such disclosure, or (b) acting as a "respondent bank" (as defined in the Act) with respect to the securities. Under the Act, "respondent banks" do not have the option of objecting to such disclosure upon the issuers' request. The Act defines a "beneficial owner" as any person who has, or shares, the power to vote a security (pursuant to an agreement or otherwise), or who directs the voting of a security. The Act defines a "respondent bank" as any bank, association or other entity that exercises fiduciary powers which holds securities on behalf of beneficial owners and deposits such securities for safekeeping with a bank, such as Escrow Agent. Under the Act, Depositor is either the "beneficial owner" or a "respondent bank."

[**x**] Depositor is the "beneficial owner," as defined in the Act, of the securities to be held by Escrow Agent hereunder.
[ ] Depositor is not the beneficial owner of the securities to be held by Escrow Agent, but is acting as a "respondent bank," as defined in the Act, with respect to the securities to be held by Escrow Agent hereunder.

IF NO BOX IS CHECKED, ESCROW AGENT SHALL ASSUME THAT DEPOSITOR IS THE BENEFICIAL OWNER OF THE SECURITIES.

For beneficial owners of the securities only:
[ ] Depositor's object
[x] Depositor does not object to the disclosure of its name, address and securities position to any issuer which requests such information pursuant to the Act for the specific purpose of direct communications between such issuer and Depositor.

IF NO BOX IS CHECKED, ESCROW AGENT SHALL RELEASE SUCH INFORMATION UNTIL IT RECEIVES A CONTRARY WRITTEN INSTRUCTION FROM DEPOSITOR.

With respect to securities issued outside of the United States, information shall be released to issuers only if required by law or regulation of the particular country in which the securities are located.  The Depositor agrees to disseminate in a timely manner any proxies or requests for voting instructions, other proxy soliciting material, information statements, and/or annual reports that it receives to any other beneficial owners.

     **24. Information Sharing.**  The Bank of New York Mellon Corporation is a global financial organization that operates in and provides services and products to clients through its affiliates and subsidiaries located in multiple jurisdictions (the "BNY Mellon Group").  The BNY Mellon Group may (i) centralize in one or more affiliates and subsidiaries certain activities (the "Centralized Functions"), including audit, accounting, administration, risk management, legal, compliance, sales, product communication, relationship management, and

11

the compilation and analysis of information and data regarding the Interested Parties (which, for purposes of this provision, includes the name and business contact information for the Interested Parties employees and representatives) and the accounts established pursuant to this Escrow Agreement ("Interested Parties Information") and (ii) use third party service providers to store, maintain and process the Interested Parties Information ("Outsourced Functions").  Notwithstanding anything to the contrary contained elsewhere in this Escrow Agreement and solely in connection with the Centralized Functions and Outsourced Functions, the Interested Parties consent to the disclosure of, and authorize BNY Mellon Group to disclose, the Interested Parties Information to (i) other members of the BNY Mellon Group (and their respective officers, directors and employees) and to (ii) third-party service providers (but solely in connection with Outsourced Functions) who are required to maintain the confidentiality of the Interested Parties Information. In addition, the BNY Mellon Group may aggregate the Interested Parties Information with other data collected and calculated by the BNY Mellon Group, and the BNY Mellon Group will own all such aggregated data, provided that the BNY Mellon Group shall not distribute the aggregated data in a format that identifies the Interested Parties Information with the Interested Parties specifically. The Interested Parties also consent to the disclosure of the Interested Parties Information to governmental and regulatory authorities in jurisdictions where the BNY Mellon Group operates and otherwise as required by law.

25.  **Successors, Assigns, and Mergers of Escrow Agent and BSA.**  Any corporation or other company into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or other company resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any corporation or other company succeeding to the business of the Escrow Agent shall be the successor of the Escrow Agent hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto, except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.  Once the Confirmation Order becomes a Final Order, BSA may assign and novate any or all of its rights and obligations in this Escrow Agreement to the Settlement Trust without any prior written consent of any other party hereto, and all obligations of BSA hereunder shall cease and terminate.

26.  **Escrow Agreement Controls**.  In the event of any conflict between this Escrow Agreement and any fee schedule or fee agreement or investment authorization and direction executed at any time in connection with this Escrow Agreement, the terms of this Escrow Agreement shall control.

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date first written above.

**THE BANK OF NEW YORK MELLON:**
as Escrow Agent

By: _____
Digitally signed by Melissa Matthews
Date: 2023.04.19 11:59:09 -04'00'

Name: Melissa Matthews

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor

By: _____

Name: _____

**HARTFORD (AS DEFINED ABOVE):**

By: _____

Name: _____

13

IN WITNESS WHEREOF, the Parties hereto have executed this Escrow Agreement as of the date first written above.

THE BANK OF NEW YORK MELLON:
as Escrow Agent

By: _____

Name:_____

HARTFORD FIRE INSURANCE COMPANY:
as Depositor

By: *Beth Costello*

Name: *Beth Costello*

HARTFORD (AS DEFINED ABOVE):

By: _____

Name: *John Kinney*

BSA:
BOY SCOUTS OF AMERICA

By: _____

Name:_____

DELAWARE BSA, LLC

By: _____

Name:_____

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____

Name: Roger C. Mosby

By: _____

Name: Michael A. Ashline

**DELAWARE BSA, LLC**

By: _____

Name: Roger C. Mosby

By: _____

Name: Michael A. Ashline

[*Signature Page to Hartford Escrow Agreement*]

13

**Annex A – Notice and Joinder of the Settlement Trust**

To: THE BANK OF NEW YORK MELLON

Ladies and Gentlemen:

This Notice and Joinder is made and delivered pursuant to that certain Escrow Agreement, dated as of April 19, 2023 (the "Effective Date"), by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"); Hartford Fire Insurance Company, as depositor (the "Depositor"); Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "Hartford"); and the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA").  The Depositor, Hartford, and BSA are also individually referred to herein as an "Interested Party" and, collectively as the "Interested Parties".  All capitalized terms used in this notice and not otherwise defined herein shall have the meanings assigned to them in the Escrow Agreement.

The Depositor, Hartford and the BSA hereby notify the Escrow Agent that they intend to designate the BSA Settlement Trust (the "Settlement Trust") as an additional party to the Escrow Agreement and an "Interested Party" on or after the Plan Effective Date (as defined in the Escrow Agreement) upon execution of this Notice and Joinder and subject to compliance with other terms and conditions specified under the Escrow Agreement.  Attached hereto as **Schedule A to the Joinder** is the incumbency certificate of the Settlement Trust which shall be added to Schedule IV of the Escrow Agreement. By execution of this Notice and Joinder, the Settlement Trust hereby joins, effective as of the Plan Effective Date, as an additional party to the Escrow Agreement and an "Interested Party" thereunder and shall be bound as a Party to the Escrow Agreement and all terms, conditions, obligations, and provisions thereof.

[SIGNATURE PAGES FOLLOW]

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor

By: _Beth Costello_
Name: Beth Costello

**HARTFORD (AS DEFINED ABOVE):**

By: _____
Name: John Kinney

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____

Name:

**DELAWARE BSA, LLC**

By: _____

Name:

**SETTLEMENT TRUST:**

By: _____

Name:

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor

By:_____
Name:


**HARTFORD (AS DEFINED ABOVE):**

By:_____
Name:


**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline


**DELAWARE BSA, LLC**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline


*[Signature Page to Hartford Notice and Joinder of the Settlement Trust]*

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor


By:_____
Name:


**HARTFORD (AS DEFINED ABOVE):**


By:_____
Name:


**BSA:**
**BOY SCOUTS OF AMERICA**


By: _____

Name:


**DELAWARE BSA, LLC**


By: _____

Name:


**SETTLEMENT TRUST:**


By: _____
Name: Hon. Barbara J. Houser (Ret.)
Title:  Trustee


Signature Page to Hartford Annex A - Notice of Joinder

**Schedule A to the Joinder**

**Incumbency Certificate**
**to be added to Schedule IV of the Escrow Agreement**

## INCUMBENCY CERTIFICATE/ AUTHORIZED CALLBACKS

The undersigned, _____Hon. Barbara J. Houser (Ret.)_____ being the _____Trustee_____
(name of Authorized Company Officer) (title)

of _____BSA Settlement Trust_____ (the "Company")

does hereby certify that (1) the individuals listed below are qualified and acting officers of the Company, (2) the signature appearing opposite the name of each such officer is a true specimen of the genuine signature of such officer, and (3) such individuals have the authority to provide written direction/ confirmation and receive callbacks at the phone number(s) noted below and execute documents to be delivered to, or upon the request of The Bank of New York Mellon and/or The Bank of New York Mellon Trust Company, N.A. (collectively, "BNY Mellon"). BNY Mellon may rely conclusively upon the certification of authority of the officers named in this Certificate in connection with all corporate trust transactions to which the Company is a party with BNY Mellon until such time as the Company (i) expressly revokes this Certificate in writing or (ii) provides a revised Certificate; in order to be effective, either must be delivered to BNY Mellon at the addresses provided in the related governing documents.

| Name | Title | Signature | Phone Number for Callback | Cell Phone Number for Callback |
|------|-------|-----------|---------------------------|-------------------------------|
| Hon. Barbara J. Houser (Ret.) | Trustee | *Barbara J Houser* | ████████ | N/A |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this certificate as of April 12, 2023.

_____Barbara J. Houser, Trustee_____
(Authorized Company Officer signature*)

*Note that the Authorized Company Officer cannot be listed as an authorized signer above unless the governing documents establish the **Authorized Company Officer's** authority to give instructions and this Incumbency Certificate, showing the signature and phone number, is notarized

V5 1120

**SCHEDULE I**
**INVESTMENT GUIDELINES**

The Escrow Property may be invested or reinvested as follows:

I.      Default Investment

In accordance with Section I.2(c) of the Escrow Agreement, in the absence of written instructions from the Settlement Trust as to investment of the Escrow Property, the Escrow Agent will invest such Escrow Property in the fund specified in paragraph 1 immediately below (or, if the Escrow Agent is unable to invest the Escrow Property in such fund, then the Escrow Agent will invest such Escrow Property in the alternate fund specified in paragraph 2 immediately below) (such fund, as applicable, the "Default Investment"):

1.   Dreyfus Treas Secs Cash Mgmt/Inst          ███████  ███████

2.   BlackRock Liquidity: Treas Tr Inst          ███████  ███████

II.     Investment Guidelines for Any Settlement Trust Instructions on Investment or Reinvestment

In accordance with Section I.2(a) of the Escrow Agreement, if the Settlement Trust provides written instructions as to the investment or reinvestment of the Escrow Property, the Escrow Agent shall invest or reinvest the Escrow Property in accordance with such instructions only if the instructions provide for investment or reinvestment of the Escrow Property (i) in such investments that the Escrow Agent is able to hold; and (ii) such investment or reinvestment is in accordance with the following investment guidelines (the "Investment Guidelines", and the requirements set forth in (i) and (ii) of this sentence, the "Permitted Investment Requirements"):

The Escrow Property may be invested in any of the permitted investments set forth in paragraphs 1, 2, or 3 below, provided that the overall portfolio shall have a weighted average maturity at 60 days.

1.   United States-Direct Obligations (*e.g.*, Treasury Bills, Notes and Bonds).  Any United States direct obligation that has a maturity of not more than 2 years from the date of purchase.

2.   United States Government Agencies and Instrumentalities-Direct or Indirect Obligations (e.g., notes issued by the Federal Home Loan Bank and Federal National Mortgage Association).  Any United States government agency or instrumentality direct or indirect obligations that has a maturity of not more than 2 years from the date of purchase.

3.   Money Market Mutual Funds: money market mutual or similar funds that invest in assets satisfying the requirements of clauses (1) through (2) above.

If the Settlement Trust provides written instructions for the investment or reinvestment of the Escrow Property that fail to comply with the Permitted Investment Requirements, the Escrow Agent shall not act on such instructions and the Escrow Property shall remain invested in the permitted investments in which the Escrow Property was invested prior to the receipt of such instructions from the Settlement Trust (or, if any portion of the Escrow Property is uninvested, and in the absence of written instructions from the Settlement Trust that comply with the Permitted Investment Requirements, the Escrow Agent shall invest such uninvested portion of the Escrow Property in the Default Investment in accordance with paragraph I of this Schedule I).

Escrow Agent notice address:          Filippo (Phil) Triolo
                                       Vice President
                                       BNY Mellon Corporate Trust
                                       Specialty Products - Escrow Services
                                       385 Rifle Camp Road
                                       Garret Tower
                                       Woodland Park, NJ 07424

**SCHEDULE II**
**Notices**

| | |
|---|---|
| BSA's notice address: | Joseph Zirkman (General Counsel)<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>Email: joseph.zirkman@scouting.org |
| with a copy to: | Jessica C. Lauria, Esq.<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Email: jessica.lauria@whitecase.com<br>Phone:  212 819 8200 |

-and-

Derek C. Abbott, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market St., 16th Floor, P.O. Box 1347
Wilmington, DW 19899-1347
Email: dabbott@morrisnichols.com
Phone:  302 658 9200

The Depositor's notice address:

Joel Townsend
Deputy General Counsel, Head of Litigation
The Hartford
One Hartford Plaza
Hartford, CT 06155
Joel.Townsend@thehartford.com
(860) 547-4990

and

Shannon Congdon
Associate General Counsel
The Hartford
One Hartford Plaza
Hartford, CT 06155
(860) 547-8781
Shannon.Congdon@thehartford.com

with a copy to:

James P. Ruggeri
Joshua Weinberg
Ruggeri Parks Weinberg LLP
1875 K Street, Suite 600
Washington, DC  20006
(202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com

and

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
(212) 230-8890
Philip.Anker@Wilmerhale.com

Hartford's notice address:

Joel Townsend
Deputy General Counsel, Head of Litigation
The Hartford
One Hartford Plaza
Hartford, CT 06155
Joel.Townsend@thehartford.com
(860) 547-4990

and

Shannon Congdon
Associate General Counsel
The Hartford
One Hartford Plaza
Hartford, CT 06155
(860) 547-8781
Shannon.Congdon@thehartford.com

with a copy to:

James P. Ruggeri
Joshua Weinberg
Ruggeri Parks Weinberg LLP
1875 K Street, Suite 600
Washington, DC  20006
(202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com

and

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
(212) 230-8890
Philip.Anker@Wilmerhale.com

Settlement Trustee's notice address:

Hon. Barbara J. Houser
U.S. Bankruptcy Court
1100 Commerce Street
Room 12A24
Dallas, TX 75242
Email:
Phone:

The Escrow Agent's notice address:

Filippo (Phil) Triolo

Vice President
BNY Mellon Corporate Trust
Specialty Products - Escrow Services
385 Rifle Camp Road
Garret Tower
Woodland Park, NJ 07424
Phone:  212 815 3229
filippo.triolo@bnymellon.com

**SCHEDULE III**

Telephone Number(s) for Call-Backs and
Person(s) Designated to Confirm Funds Transfer Instructions

For BSA:

Michael Ashline
Boy Scouts of America                        704-904-6847

For Depositor:

Kate Jorens, Treasurer                       (860) 547-4066

Nancy O'Connor, Assistant Treasurer          (860) 297-6986

For Hartford:

Kate Jorens, Treasurer                       (860) 547-4066

Nancy O'Connor, Assistant Treasurer          (860) 297-6986

For the Settlement Trust:

[Name]                                       Telephone Number

Telephone call-backs shall be made to each appropriate party if more than one party's instructions are required pursuant to this Escrow Agreement.

## Schedule IV

### Authorized Officers of Depositor

| Name | Signature | Phone Number |
|---|---|---|
| Beth Costello | *[signature]* | (860) 547-4135 |
| John Kinney | *[signature]* | (860) 547-8850 |

### Authorized Officers of Hartford

| Name | Signature | Phone Number |
|---|---|---|
| Beth Costello | *[signature]* | (860) 547-4135 |
| John Kinney | *[signature]* | (860) 547-8850 |

### Authorized Officers of the BSA

| Name | Signature | Phone Number |
|---|---|---|
| Roger Mosby | | (936) 235-6353 |
| Joseph Zirkman | | (315) 427-2914 |
| Michael Ashline | | (704) 904-6847 |

### Authorized Officers of Settlement Trust

| Name | Signature | Phone Number |
|---|---|---|
| | | |
| | | |
| | | |

## Schedule IV

### Authorized Officers of Depositor

| Name | Signature | Phone Number |
|------|-----------|--------------|
|      |           |              |
|      |           |              |

### Authorized Officers of Hartford

| Name | Signature | Phone Number |
|------|-----------|--------------|
|      |           |              |
|      |           |              |

### Authorized Officers of the BSA

| Name | Signature | Phone Number |
|------|-----------|--------------|
| Roger C. Mosby |  | (936) 235-6353 |
| Joseph A. Zirkman |  | (315) 427-2914 |
| Michael A. Ashline |  | (704) 904-6847 |

### Authorized Officers of Settlement Trust

| Name | Signature | Phone Number |
|------|-----------|--------------|
|      |           |              |
|      |           |              |

**Schedule V**

**ELECTRONIC METHODS AUTHORIZATION, LIMITATION OF LIABILITY AND INDEMNITY**

      **Interested Party Authorization, Limitation of Liability and Indemnity.**  Each Interested Party hereby authorizes the Escrow Agent and its affiliates (the "Bank") to rely upon and comply with instructions and directions sent by it via Electronic Means by persons believed by the Bank to be authorized to give instructions and directions on behalf of the Interested Party.  Except as set forth below with respect to funds transfers, the Bank shall have no duty or obligation to verify or confirm that the person who sent such instructions or directions is, in fact, a person authorized to give instructions or directions on behalf of the Interested Party (other than to verify that the signature on a facsimile is the signature of a person authorized to give instructions and directions on behalf of the Interested Party); and the Bank shall have no liability for any losses, liabilities, costs or expenses incurred or sustained by the relevant Interested Party as a result of such reliance upon or compliance with such instructions or directions.  Each Interested Party agrees to assume all risks arising out of the use of Electronic Means to submit instructions and directions to the Bank, including without limitation the risk of the Bank acting on unauthorized instructions, and the risk of interception and misuse by third parties.

      If an Interested Party elects to give the Escrow Agent instructions and directions using Electronic Means and the Escrow Agent in its discretion elects to act upon such instructions or directions, the Escrow Agent's understanding of such instructions and directions shall be deemed controlling.  Each of the Interested Parties understands and agrees that the Escrow Agent cannot determine the identity of the actual sender of such instructions and directions and that the Escrow Agent shall conclusively presume, following compliance with the security procedures set forth below, that directions that purport to have been sent by an Authorized Person listed on the incumbency certificate provided to the Escrow Agent have been sent by such Authorized Person.  Each of the Interested Parties shall be responsible for ensuring that only Authorized Persons transmit such instructions and directions to the Escrow Agent and that each of the Interested Parties and all Authorized Persons are solely responsible to safeguard the use and confidentiality of applicable user and authorization codes, passwords and/or authentication keys upon receipt by the Interested Parties.  The Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Escrow Agent's good faith reliance upon and compliance with such instructions and directions notwithstanding such directions conflict or are inconsistent with a subsequent written instruction.

      Each of the Interested Parties agrees: (i) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions and directions to the Escrow Agent and that there may be more secure methods of transmitting instructions and directions than the method(s) selected by the Interested Parties; (ii) that the security procedures (if any) to be followed in connection with its transmission of instructions and directions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iii) to notify the Escrow Agent immediately upon learning of any compromise or unauthorized use of the security procedures.

      **Funds Transfer Security Procedures**.  With respect to any "funds transfer," as defined in Article 4-A of the Uniform Commercial Code, the Escrow Agent shall apply the following security procedure unless an Interested Party utilizes a Secure Platform to send instructions and directions to the Escrow Agent or an alternative authentication method has been selected by the relevant Interested Party:  An Interested Party's payment instruction is to include the name and (in the case of a facsimile) signature of the person initiating the funds transfer request.  If the name is listed as an Authorized Person on a certificate in the form of Schedule IV hereto delivered pursuant to the Escrow Agreement, the Bank will confirm the instructions by telephone call to any person listed as an Authorized Person, who may be the same person who initiated the instruction.  When calling back, the Bank will request from the relevant Interested Party's staff member his or her name.  If the name is listed in the Escrow Agent's records as an Authorized Person, the Bank will confirm the instructions with respect to amount, names and numbers of accounts to be charged or credited and other relevant reference information.  Where the Escrow Agreement contemplates joint payment instructions from the interested parties, the Escrow Agent shall call back both the Depositor and BSA.  Each Interested Party acknowledges that the Bank has offered such Interested Party other security procedures that are more secure and are commercially reasonable for such Interested Party, and that

such Interested Party has nonetheless chosen the procedures described in this paragraph. Each Interested Party agrees to be bound by any payment order issued in its name, whether or not authorized, that is accepted by the Bank in accordance with the above procedures. When instructed to credit or pay a party by both name and a unique numeric or alpha-numeric identifier (e.g., ABA number or account number), the Bank, and any other bank participating in the funds transfer, may, in good faith, rely solely on the unique identifier, even if it identifies a party different than the party named. This applies to beneficiaries as well as any intermediary bank. Each Interested Party agrees to be bound by the rules of any funds transfer network used in connection with any payment order accepted by the Bank hereunder. The Escrow Agent shall not be obliged to make any payment or otherwise to act on any instruction notified to it under this Escrow Agreement if it is unable to validate the authenticity of the request by telephoning an Authorized Person who has not executed the relevant request or instruction of the relevant Interested Party. Payment or otherwise to act on any instruction by Authorized Person of the relevant Interested Party will be made by the Escrow Agent within three (3) Business Days (as defined in Section II.6) after Escrow Agent's verification of instructions as set forth above.

**Authorization**. This authorization shall remain in full force and effect until the earlier of termination of this Escrow Agreement or the date it is canceled, revoked or amended by written notice received by the Escrow Agent; and replaces and supersedes any previous authorization from an Interested Party to the Bank relating to the giving of instructions by Electronic Means in relation to this Escrow Agreement, and is in addition to all other authorizations. Notwithstanding any revocation, cancellation or amendment of this authorization, any action taken by the Bank pursuant to this authorization prior to the Bank's actual receipt and acknowledgement of a notice of revocation, cancellation or amendment shall not be affected by such notice.

**Indemnity**. The Depositor and the Settlement Trust, jointly and severally, agree to indemnify from the Escrow Property (and solely if the Escrow Property is insufficient, personally) and hold harmless the Bank against any and all claims, losses, damages liabilities, judgments, costs and expenses (including reasonable attorneys' fees) (collectively, "Losses") incurred or sustained by the Bank as a result of or in connection with the Bank's reliance upon and compliance with instructions or directions given by such Interested Party by Electronic Means in accordance with this Escrow Agreement, provided, however, that such Losses have not arisen from the gross negligence or willful misconduct of the Bank.

**Representation**. Each Interested Party hereby represents and warrants to the Bank that this authorization is properly given and has been duly approved by a resolution of its respective governing body or has otherwise been duly approved by an officer or other representative of the Party with authority to approve and give such authorization.

**EXHIBIT A**

FUNDS DISBURSEMENT TO SETTLEMENT TRUST INSTRUCTION

This Funds Disbursement Instruction is executed and delivered pursuant to the Escrow Agreement dated as of April 19, 2023 (the "Escrow Agreement") by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"); Hartford Fire Insurance Company, as depositor (the "Depositor"); Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "Hartford"); the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA") and the Settlement Trust.

Depositor hereby acknowledges that a disbursement is to occur at: [time of the Release Date].

Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositor hereby irrevocably instructs Escrow Agent to (i) pay all fees of the Escrow Agent in the amount of $[_____] and to its counsel in the amount of $[_____] and all taxes that are payable and all other Escrow Costs (as such term is defined in the Underlying Agreement) of the Escrow Account (all such fees, taxes, and other Escrow Costs, the "Escrow Fees"), and (ii) release all remaining balance of the Escrow Property of $_____ (the "Disbursement Amount") to the Settlement Trust as set forth in the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan") in accordance with the following wiring instruction:

[Bank name]
[Routing number]
[Account number]

The Settlement Trust and the Depositor consent to the payment of the Escrow Fees in the preceding paragraph.

[SIGNATURE PAGES FOLLOW]

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor


By:_____
Name:

**HARTFORD (AS DEFINED ABOVE):**


By:_____
Name:

**BSA:**
**BOY SCOUTS OF AMERICA**


By: _____
Name: Roger C. Mosby


By: _____
Name: Michael A. Ashline


**DELAWARE BSA, LLC**


By: _____
Name: Roger C. Mosby


By: _____
Name: Michael A. Ashline


[*Signature Page to Hartford Funds Disbursement To Settlement Trust Instruction*]

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor


By:_____

Name:

**HARTFORD (AS DEFINED ABOVE):**


By:_____

Name:


**BSA:**
**BOY SCOUTS OF AMERICA**


By:    _____

Name:


**DELAWARE BSA, LLC**


By:    _____

Name:


**SETTLEMENT TRUST:**


By:    _____

Name: Hon. Barbara J. Houser (Ret.)
Title:  Trustee


Signature Page to Hartford Exhibit A - Funds Disbursement

**EXHIBIT B**

FUNDS DISBURSEMENT TO DEPOSITOR INSTRUCTION

This Funds Disbursement Instruction is executed and delivered pursuant to the Escrow Agreement dated as of _____, 2023 (the "Escrow Agreement"), by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"); Hartford Fire Insurance Company, as depositor (the "Depositor"); Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "Hartford"); the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA"), and the Settlement Trust.

Depositor hereby certifies that the following event(s) has occurred: [●].[1]

Depositor hereby acknowledges that a disbursement is to occur at: [●].

Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositor hereby irrevocably instructs Escrow Agent to release $_____ (the "Disbursement Amount") to Depositor in accordance with the following wiring instruction:

[Bank name]
[Routing number]
[Account number]

[SIGNATURE PAGES FOLLOW]

---

[1] Note: Blank to contain any one or more of the following events:

(i)       the agreement in writing of the Interested Parties terminating this Escrow Agreement based on any of the termination events set forth in the Underlying Agreement;

(ii)      the termination of the Underlying Agreement;

(iii)     the exercise of any Specified Action (as such term is defined in the Underlying Agreement) taken by BSA; or

(iv)      a Reversal (as such term is defined in the Underlying Agreement).

**HARTFORD FIRE INSURANCE COMPANY:**
as Depositor

By:_____
Name:

**HARTFORD (AS DEFINED ABOVE):**

By:_____
Name:

CC:    BSA
       Settlement Trust