# EXHIBIT A-4

**EXECUTION VERSION**



**THIS ESCROW AGREEMENT**

**IS MADE AS OF THE PLAN EFFECTIVE DATE**

**among**

**THE BANK OF NEW YORK MELLON, as Escrow Agent**

**and**

**CLARENDON NATIONAL INSURANCE COMPANY and
ZURICH AMERICAN INSURANCE COMPANY, as Depositors**

**and**

**THE BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

ESCROW ACCOUNT NUMBER(S)

TITLE(S) OF ACCOUNT(S)          Clarendon BSA Settlement Trust Esc

This **ESCROW AGREEMENT** (the "Escrow Agreement") is made as of April 20, 2023 by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"), Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company) and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company), as depositors (collectively, the "Depositors" or "Clarendon"), the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA," the Depositors and BSA are also individually referred to herein as an "Interested Party" and, collectively the "Interested Parties"). Upon the occurrence of the Effective Date and written notice to the Escrow Agent thereof, as attached hereto as Annex A, the BSA Settlement Trust (the "Settlement Trust") shall be a party to this Escrow Agreement and shall be an "Interested Party" as of the Effective Date. All references herein to the duties and obligations of the Settlement Trust shall only apply from and after the Effective Date (as defined in Annex A hereto). Capitalized terms not otherwise defined herein shall have the definitions ascribed to such terms in the Plan (as defined herein), which shall be consistent with the meanings given in the Underlying Agreement (as defined herein), or if such term is not in the Plan, the definition in the Underlying Agreement. In the event of any conflict between the terms and provisions of the Underlying Agreement, on the one hand, and the terms and provisions of this Escrow Agreement, on the other hand, the Underlying Agreement shall govern and control in all respects, provided, however, the Escrow Agent's duties shall be governed exclusively by the express terms of this Escrow Agreement.

**WHEREAS**, on February 18, 2020, BSA commenced proceedings under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

**WHEREAS**, on February 18, 2022, BSA filed the notice of the executed Settlement Agreement and Release, dated February 14, 2022 (as amended, supplemented, or otherwise modified from time to time, the "Underlying Agreement");

**WHEREAS**, on September 6, 2022, BSA filed their *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan");

**WHEREAS**, on September 8, 2022, the Bankruptcy Court entered the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10316] (the "Confirmation Order") confirming the Plan;

**WHEREAS**, pursuant to the Underlying Agreement, BSA, Clarendon, and other parties thereto agreed that the Depositors will cause certain amounts to be deposited in escrow and to be held in escrow pending their release in accordance with the Underlying Agreement;

**WHEREAS**, it is the intention of the Escrow Agent and Interested Parties that the Settlement Trust, on the Effective Date, will be joined as a party to this Escrow Agreement;

**WHEREAS**, the Escrow Agent and Interested Parties now desire to enter into this Escrow Agreement to provide for and to evidence their mutual agreement with respect to this holding and maintenance of the Escrow Property (as defined herein) in escrow;

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual agreements contained herein, and intending to be legally bound hereby, the Interested Parties hereby appoint the Escrow Agent to act as, and the Escrow Agent hereby agrees to act as, escrow agent hereunder and to hold the Escrow Property in non-interest-bearing account no. ▮▮▮▮▮▮▮ titled Clarendon BSA Settlement Trust Esc (the "Escrow Account"), in accordance with and subject to the following Instructions and Terms and Conditions, and the parties hereby agree as follows:

# I.  INSTRUCTIONS

**1.  Escrow Property**. Subject to Section I.3 below, on, or as soon as reasonably practicable after the Effective Date, the Depositors shall deliver $13,629,000.00 (the "Escrow Amount") to the Escrow Agent. The Escrow Amount and all income earned thereon minus (i) the fees of the Escrow Agent, and (ii) all taxes that are payable and other costs of the Escrow Account, which amounts (i) and (ii) shall be paid from the amount then remaining in the Escrow Account (such income (or loss) minus such amounts, the "Net Income"), shall remain in

the Escrow Account until the dates set forth in Section I.3 below.  The Escrow Amount and Net Income plus all interest, dividends and other distributions, payments and earnings thereon and proceeds thereof (collectively the "Distributions") received by the Escrow Agent, less any property and funds distributed or paid in accordance with this Escrow Agreement, are collectively referred to herein as "Escrow Property," and shall be held by the Escrow Agent in escrow and disbursed in accordance with the terms and provisions of this Escrow Agreement.  Prior to the termination of this Escrow Agreement, the Interested Parties, shall not have legal title to the Escrow Property and legal title to the Escrow Property shall at all times be held under and subject to the terms this Escrow Agreement until disbursed in accordance herewith.

2. **Investment and Reinvestment of Escrow Property**.

(a)      Investment and Reinvestment of Escrow Property.  During the term of this Escrow Agreement, (i) before the Settlement Trust is joined as a party to this Escrow Agreement, the Escrow Agent will invest and reinvest, at the written direction of the Depositors,  all Escrow Property in Money Market Mutual Funds as set forth on Schedule I and (ii) from and after the time that the Settlement Trust is joined as a party to this Escrow Agreement, the Escrow Property shall be invested and reinvested by the Escrow Agent at the written direction of the Settlement Trust in (i) such investments that the Escrow Agent is able to hold; and (ii) in accordance with the investment guidelines set forth in Schedule I.

(b)      Risk of Loss and Benefit of Income.  To the extent that the Escrow Property is released to the Settlement Trust, the Settlement Trust will bear all risks, and receive all income, associated with any such investment of such Escrow Property released to the Settlement Trust.  Other than an interest identified in the Underlying Agreement, once deposited into the Escrow Account, and while held by the Escrow Agent, the Depositors shall not have any legal or equitable interest in any Escrow Property absent the occurrence of a Qualifying Event (as defined below).  No loss or failure to obtain returns on the Escrow Property while in the Escrow Account shall require the Depositors to increase the Escrow Amount they are paying or have already paid and Depositors shall have no liability or obligations to the Settlement Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns while the Escrow Property is in the Escrow Account.  The Interested Parties shall have no liability for any loss sustained as a result of any investment selected as indicated in the previous sentence or made pursuant to the instructions of the Settlement Trust, as a result of any liquidation of any investment prior to its maturity or for failure of the Settlement Trust to give the Escrow Agent instructions to invest or reinvest the Escrow Property.  The Escrow Agent shall have no liability for any loss sustained as a result of any investment, any investment made pursuant to the instructions of the parties hereto, or any liquidation of any investment prior to its maturity.  For the avoidance of doubt, the Escrow Agent shall have no liability for any losses as the result of any actions it takes in good faith pursuant to instructions it receives from an Authorized Person (as defined herein) to invest Escrow Property.

(c)      Escrow Agent Rights and Obligations.  In the absence of written instructions from the Depositors or the Settlement Trust as to investment of the Escrow Property, the Escrow Agent will invest such Escrow Property as set forth in Schedule I of this Escrow Agreement.  Periodic monthly statements will be provided to the Interested Parties reflecting transactions executed on behalf of the Escrow Account.  The Interested Parties will, upon written request, receive a statement of transaction upon completion of any securities transaction in the Escrow Account without any additional cost.  The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

3. **Distribution of Escrow Property**.  The Escrow Agent is directed to hold and distribute the Escrow Property in the following manner:

(a)      Depositor Reimbursement.  The Escrow Agent shall deliver to the Depositors, from time to time upon and pursuant to written instructions from the Depositors, such amounts as are certified in writing by the Depositors and verified in writing by BSA (prior to the Effective Date) and the Settlement Trust (on and after the Effective Date) to be necessary to reimburse the Depositors for the actual cost of taxes on the earnings on the Escrow Property (including interest and penalties) that is imposed upon and payable by the Depositors to any tax authority, provided, however, that the amount reimbursed under this provision shall not exceed the Net Income of the Escrow Property.

(b)      Delivery of Escrow Property to the Settlement Trust.  On the Release Date (as defined in Exhibit A hereto), and upon the written instruction of the Depositors in the form attached hereto as Exhibit A, the Escrow Agent shall (i) pay all fees, costs and expenses of the Escrow Agent (including reasonable fees, costs and expenses of its counsel) incurred in the normal course of business of carrying out all duties and obligations under the Escrow Agreement and all taxes that are payable and other costs of the Escrow Account, (ii) release all remaining balance of the Escrow Property to the Settlement Trust.  The Depositors, in their discretion, may direct the Escrow Agent (by written instruction in the form attached hereto as Exhibit A, but without requiring the agreement or execution of such written instruction by BSA or Settlement Trust) to release any portion of the Escrow Property to the Settlement Trust prior to the time the Confirmation Order becomes a Final Order.

(c)      Delivery of Escrow Property to Depositors.  The Escrow Agent shall, upon written instruction signed by the Depositors (a copy of which shall be provided to the other Interested Parties by the Depositors substantially concurrent with the transmission to the Escrow Agent) in the form attached hereto as Exhibit B, certifying the occurrence of any one or more of the events described below (the "Qualifying Events"), promptly (and no later than seven (7) Business Days (as defined herein) after the date of such written demand, unless otherwise agreed to by the Interested Parties) (i) pay all fees, costs and expenses of the Escrow Agent (including reasonable fees, costs, and expenses of its counsel) incurred in the normal course of business of carrying out all duties and obligations under the Escrow Agreement and all taxes that are payable and other costs of the Escrow Account, and (ii) release all remaining balance of the Escrow Property to the Depositors in accordance with such instruction.  The following constitute Qualifying Events:

(1)      the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court, or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a reversal or remand);

(2)      the withdrawal of the Plan;

(3)      the failure of the Plan to conform to the Underlying Agreement;

(4)      a Reversal (as such term is defined in the Underlying Agreement);

(5)      the conversion to chapter 7 or the dismissal of BSA's chapter 11 cases;

(6)      the agreement in writing of the Interested Parties terminating this Escrow Agreement; or

(7)      entry of an order of the Bankruptcy Court or District Court directing the termination of the Escrow Agreement or disbursement of the Escrow Property to the Depositor.

(d)      Termination.  Upon delivery of the Escrow Property pursuant to Sections I.3(b) or I.3(c) above, this Escrow Agreement shall terminate.  Upon the taking of all actions as described by this Escrow Agreement, the Escrow Agent shall have no further obligations or responsibilities hereunder to the parties hereto or to any other person or persons in connection with this Escrow Agreement.  Subject to any retention requirements set forth in the Plan that the Escrow Agent is to give written notice of by another party to this Escrow Agreement, the Escrow Agent may dispose of any records or reports concerning the Escrow Property and/or any transactions relating to the Escrow Account in accordance with the Escrow Agent's established procedures.

(e)      Escrow Amount Separate.  The Escrow Agent shall at all times hold the Escrow Property segregated on the books and records of the Escrow Agent from all other funds and securities deposited with or held by the Escrow Agent.  The Escrow Agent shall not commingle the Escrow Property with any other assets of the Escrow Agent but will hold such Escrow Property separate and apart from other assets.  The Escrow Agent shall hold and dispose of the Escrow Property only as set forth herein.  The Escrow Property shall always be maintained and disposed of by the Escrow Agent in accordance with the terms of this Escrow Agreement, and the Escrow Property shall at all times be maintained on the books of the Escrow Agent evidencing such facts.  The Escrow Amount received by the Escrow Agent under this Escrow Agreement shall not be subject to checks or drafts drawn by the Interested Parties, and the Escrow Agent shall have no right or title with respect to the Escrow Amount except as Escrow Agent under the terms hereof.  The Escrow Agent shall neither make nor permit any disbursement from the Escrow Amount except as directed in writing and as expressly provided herein.

**4. Authorized Persons**.  Each of the Interested Parties shall, on the date of this Escrow Agreement (and upon the Effective Date, for the Settlement Trust), deliver to the other parties a certificate in the form of Schedule IV hereto as to the incumbency and specimen signature of at least two (2) officers or other representatives of such

4

party authorized to act for and give and receive notices, requests and instructions on behalf of such party in connection with this Escrow Agreement (each such officer or other representative, an "Authorized Person").  From time to time, an Interested Party may, by delivering to the other parties a revised certificate in the form of Schedule IV, change the information previously given, but each of the parties hereto shall be entitled to rely conclusively on the then-current schedule until receipt of a superseding schedule.

**5. Facsimile/Email Instructions**.  Each of the Interested Parties hereby provides to the Escrow Agent and agrees with and accepts the authorizations, limitations of liability, indemnities, security procedure and other provisions set forth on Schedule V hereto in connection with the Escrow Agent's reliance upon and compliance with instructions and directions sent by such parties via e-mail, facsimile transmission, secure electronic transmission containing applicable authorization codes, passwords and/or authentication keys issued by the Escrow Agent (a "Secure Platform"), or another method or system specified by the Escrow Agent as available for use in connection with its services hereunder (collectively, "Electronic Means").

**6. Addresses**.  Notices, instructions, and other communications shall be sent to the Escrow Agent and to the Interested Parties in accordance with Schedule II and Schedule III attached hereto and incorporated herein.

**7. Compensation**.

(a)    The Interested Parties agree that the Escrow Agent (or any party, solely to the extent such party advances expenses on the Escrow Agent's behalf) shall be reimbursed out of income generated by the Escrow Property (or if such income is insufficient, from the Escrow Property) for out-of-pocket expenses, disbursements, and advances incurred or made by it in connection with the preparation, execution, performance, delivery, modification, and termination of this Escrow Agreement.

(b)    Notwithstanding anything to the contrary in this Escrow Agreement, with respect to any fee, expense reimbursement, indemnity or other payment to Escrow Agent, Escrow Agent shall first seek such payment from the Escrow Property. If for any reason the Escrow Property is insufficient to cover such payment, the Depositors and the Settlement Trust shall then be jointly and severally responsible for such payment.

## II.  TERMS AND CONDITIONS

**1. Escrow Agent's Duties.**  The duties, responsibilities and obligations of the Escrow Agent shall be limited to those expressly set forth herein, and no duties, responsibilities or obligations shall be inferred or implied. The Escrow Agent shall not be subject to, nor required to comply with, nor required to inquire as to the performance of any obligation under, any other agreement or plan between or among the Interested Parties (including the Underlying Agreement and the Plan, and with regards to Plan, including any order or determination related to the Plan) or to which any Interested Party is a party, even though reference thereto may be made herein, or to comply with any direction or instruction from any Interested Party or any entity acting on its behalf.  The Escrow Agent shall be entitled to conclusively rely on the written direction of the Interested Parties set forth herein without determining whether such instruction complies with any term of the Underlying Agreement or the Plan.  The Escrow Agent shall not be required to, and shall not, expend or risk any of its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder.

**2. Agreement for Benefit of Parties.**  This Escrow Agreement is for the exclusive benefit of the parties hereto and their respective successors hereunder, and shall not be deemed to give, either express or implied, any legal or equitable right, remedy, or claim to any other entity or person whatsoever.  When the Settlement Trust is formed, it will be joined as a party to this Escrow Agreement.

**3. Escrow Agent's Reliance on Orders, Etc.**  If at any time the Escrow Agent is served with any judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process which in any way affects Escrow Property (including, but not limited to, orders of attachment or garnishment or other forms of levies or injunctions or stays relating to the transfer of Escrow Property), the Escrow Agent is authorized to comply therewith in any manner as it or its legal counsel of its own choosing deems appropriate; and if the Escrow Agent complies with any such judicial or administrative order, judgment, decree, writ or other form of judicial or administrative process, the Escrow Agent shall not be liable to any of the parties hereto or to any other person or entity even though such order, judgment, decree, writ or process may be subsequently modified or vacated or

5

otherwise determined to have been without legal force or effect. The Escrow Agent shall give prompt written notice of any of the foregoing events or threatened events (in each case if permitted by applicable law) to the Interested Parties, as far in advance of compliance as possible, so that the Interested Parties are afforded an opportunity to take action before compliance in the event they object to such judgment, order, or process

**4. The Escrow Agent.**

(a) The Escrow Agent shall not be liable for any action taken or omitted by it in good faith or for any loss or injury resulting from its actions or its performance or lack of performance of its duties hereunder in the absence of gross negligence or willful misconduct on its part. In no event shall the Escrow Agent be liable (i) for acting in accordance with this Escrow Agreement and relying upon (and shall be fully protected in relying upon) any instruction, notice, demand, certificate or document from any Interested Party, any entity acting on behalf of any Interested Party or any other person or entity which it reasonably believes to be genuine, (ii) for any indirect, consequential, punitive or special damages, even if advised of the possibility thereof, (iii) for the acts or omissions of its nominees, correspondents, designees, agents or custodians selected by it in good faith (other than the Escrow Agent's employees), or (iv) for an amount in excess of the value of the Escrow Property.

(b) Attachment of the Escrow Property. As security for the due and punctual performance of any and all of the Depositors and the Settlement Trust's obligations to the Escrow Agent hereunder, now or hereafter arising, the Depositors and the Settlement Trust, individually and collectively, hereby pledge, assign and grant to the Escrow Agent a continuing security interest in, and a lien on and right of setoff against, the Escrow Property and all Distributions thereon, investments thereof or additions thereto (whether such additions are the result of deposits by Depositors or the investment of Escrow Property or otherwise). If any fees, expenses or costs incurred by, or any obligations owed to, the Escrow Agent hereunder are not promptly paid when due, the Escrow Agent may reimburse itself therefor from the Escrow Property, and may sell, convey or otherwise dispose of any Escrow Property for such purpose. The security interest and setoff rights of the Escrow Agent shall at all times be valid, perfected and enforceable by the Escrow Agent against the Depositors and the Settlement Trust in accordance with the terms of this Escrow Agreement.

(c) Retention of Professionals. The Escrow Agent may consult with legal counsel as to any matter relating to this Escrow Agreement, which reasonable expense shall be reimbursed from the Escrow Property (other than expenses incurred in connection with the Escrow Agent's gross negligence or willful misconduct), and the Escrow Agent shall not incur any liability in acting in good faith in accordance with any advice from such counsel.

(d) Force Majeure. The Escrow Agent shall not be responsible or liable for any failure or delay in the performance of its obligations under this Escrow Agreement to the extent caused, directly or indirectly, by natural disasters, fire, acts of God, strikes or other labor disputes, work stoppages, acts of war or terrorism, general civil unrest, actual or threatened epidemics, disease, act of any government, governmental authority or police or military authority, declared or threatened state of emergency, legal constraint, the interruption, loss or malfunction of utilities or transportation, communications or computer systems, or any other similar events beyond its reasonable control. The Escrow Agent will use commercially reasonable efforts to minimize the effect of any such events.

**5. Collections.** Unless otherwise specifically set forth herein, the Escrow Agent shall proceed as soon as practicable to collect any checks or other collection items at any time deposited hereunder. All such collections shall be subject to the Escrow Agent's usual collection practices or terms regarding items received by the Escrow Agent for deposit or collection. The Escrow Agent shall not be required, or have any duty, to notify anyone of any payment or maturity under the terms of any instrument deposited hereunder, nor to take any legal action to enforce payment of any check, note or security deposited hereunder or to exercise any right or privilege which may be afforded to the holder of any such security.

**6. Statements.** The Escrow Agent shall provide to the Interested Parties, at least monthly, statements reflecting activity in the Escrow Account for the preceding period. No statement need be provided for periods in which no Escrow Account activity occurred. Each such statement shall be deemed to be correct and final upon receipt thereof by the Interested Parties unless the Escrow Agent is notified in writing to the contrary within thirty (30) Business Days of the date of such statement. A **"Business Day"** shall mean any day on which the Escrow

Agent is open for business.

**7.** <u>Limitation of Escrow Agent's Responsibility</u>.  The Escrow Agent shall not be responsible in any respect for the form, execution, validity, value or genuineness of documents or securities deposited hereunder, or for any description therein, or for the identity, authority or rights of persons executing or delivering or purporting to execute or deliver any such document, security or endorsement.

**8.** <u>Notices</u>.  Notices, instructions or other communications shall be in writing and shall be given to the address set forth in the Schedule II (or to such other address as may be substituted therefor by written notification to the other parties).  Notices to the Escrow Agent shall be deemed to be given when actually received by the Escrow Agent's Escrow Unit.  The Escrow Agent is authorized to comply with and rely upon any notices, instructions or other communications believed by it to have been sent or given by an Interested Party or by a person or persons authorized by an Interested Party, including persons identified on Authorized Persons schedules delivered pursuant to Section I.4.  Whenever under the terms hereof the time for giving a notice or performing an act falls upon a Saturday, Sunday, or banking holiday, such time shall be extended to the next Business Day.

**9.** <u>Indemnity</u>.  The Depositors and the Settlement Trust, jointly and severally, shall be liable for and shall reimburse and indemnify the Escrow Agent and hold the Escrow Agent and its affiliates, and the Escrow Agent's and such affiliates' respective directors, officers, employees, agents, successors and assignees (the "<u>Indemnified Parties</u>"), harmless from and against any and all claims, losses, liabilities, costs, disbursements, damages or expenses (including reasonable attorneys' fees and expenses and court costs) (collectively, "<u>Losses</u>") arising from or in connection with or related to this Escrow Agreement or being the Escrow Agent hereunder (including but not limited to Losses incurred by the Escrow Agent in connection with its successful defense, in whole or in part, of any claim of gross negligence or willful misconduct on its part), <u>provided</u>, <u>however</u>, that nothing contained herein shall require the Depositors and the Settlement Trust to indemnify Escrow Agent for Losses to the extent caused by its gross negligence or willful misconduct.

**10.** <u>Removal and Resignation of Escrow Agent; Successor Escrow Agent</u>.

(a)  The Interested Parties may remove the Escrow Agent at any time by giving to the Escrow Agent thirty (30) calendar days' prior notice in writing signed by the Interested Parties (the "<u>Removal Notice</u>").  The Escrow Agent may resign at any time by giving sixty (60) calendar days' prior written notice thereof (the "<u>Resignation Notice</u>").

(b)  Within ten (10) calendar days after giving the Removal Notice or receiving the Resignation Notice, the Interested Parties shall jointly agree on and appoint a successor escrow agent.  If a successor escrow agent has not accepted such appointment by the end of such thirty (30) day period, the Escrow Agent may, in its sole discretion, deliver the Escrow Property to Depositors at the address provided herein or may apply to a court of competent jurisdiction for the appointment of a successor escrow agent or for other appropriate relief, and thereafter be relieved of all further duties and obligations as Escrow Agent hereunder.  The costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Escrow Agent in connection with such proceeding shall be paid from the Escrow Property, and, only if the Escrow Property is insufficient to satisfy such costs and expenses, be deemed a joint and several obligation of the Depositors and the Settlement Trust, as applicable.

(c)  Upon receipt of the identity of the successor escrow agent, the Escrow Agent shall either deliver the Escrow Property then held hereunder to the successor escrow agent, less the amount of fees, costs and expenses or other obligations owed to the Escrow Agent or hold such Escrow Property (or any portion thereof), pending distribution, until all such fees, costs and expenses or other obligations are paid.

(d)  Upon delivery of the Escrow Property to Depositors, or in accordance with the instructions of a court of competent jurisdiction pursuant to subclause (b) above, or to successor escrow agent, the Escrow Agent shall have no further duties, responsibilities, or obligations hereunder.

**11.** <u>Escrow Agent's Obligations in the Event of Ambiguities, Conflicting Claims, Etc.</u>

(a)  In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Escrow Agent hereunder, the Escrow Agent may, in its sole discretion, refrain from

taking any action other than retain possession of the Escrow Property, unless and until the Escrow Agent receives written instructions, signed by Interested Parties, which eliminates such ambiguity or uncertainty.

(b)  In the event of any dispute between or conflicting claims by or among the Interested Parties and any other person or entity with respect to any Escrow Property, the Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to such Escrow Property so long as such dispute or conflict shall continue, and the Escrow Agent shall not be or become liable in any way to any Interested Party for failure or refusal to comply with such conflicting claims, demands or instructions.  The Escrow Agent shall be entitled to refuse to act until, in its sole discretion, either (i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of a court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting parties as evidenced in a writing satisfactory to the Escrow Agent, or (ii) the Escrow Agent shall have received security or an indemnity satisfactory to it sufficient to hold it harmless from and against any and all Losses which it may incur by reason of so acting.  The Escrow Agent may, in addition, elect, in its sole discretion, to commence an interpleader action or seek other judicial relief or orders as it may deem, in its sole discretion, necessary.  The costs and expenses (including reasonable attorneys' fees and expenses) incurred in connection with such proceeding shall be paid from the Escrow Property and, only if the Escrow Property is insufficient to satisfy such costs and expenses, shall be deemed, as applicable, the Depositors' and the Settlement Trust's obligation.

12.  **Governing Law; Jurisdiction; Waiver of Right to Trial by Jury.**  This Escrow Agreement shall be interpreted, construed, enforced and administered in accordance with the internal substantive laws (and not the choice of law rules) of the State of New York.  The Escrow Agent and each Interested Party hereby waives the right to trial by jury.  Each Interested Party waives personal service of process and consents to service of process by certified or registered mail, return receipt requested, directed to it at the address last specified for notices hereunder, and such service shall be deemed completed ten (10) calendar days after the same is so mailed.

13.  **Amendments, Etc.**  Except as otherwise permitted herein, this Escrow Agreement may be modified only by a written amendment signed by the Escrow Agent and the Interested Parties, and no waiver of any provision hereof shall be effective unless expressed in a writing signed by the party to be charged.

14.  **Remedies Cumulative.**  The rights and remedies conferred upon the parties hereto shall be cumulative, and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of any additional rights or remedies.  The waiver of any right or remedy hereunder shall not preclude the subsequent exercise of such right or remedy.

15.  **Representations and Warranties.**

(a) Each of the Interested Parties represents and warrants (i) that this Escrow Agreement has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other debtor relief laws and that certain equitable remedies may not be available regardless of whether enforcement is sought in equity or at law, and (ii) that the execution, delivery and performance of this Escrow Agreement by it do not and will not violate any applicable law or regulation.

(b) Each of the Interested Parties covenants and represents that neither it nor any of its affiliates, subsidiaries, directors or officers are the target or subject of any sanctions enforced by the US Government, (including, the Office of Foreign Assets Control of the US Department of the Treasury ("OFAC")), the United Nations Security Council, the European Union, HM Treasury, or other relevant sanctions authority (collectively "Sanctions").

(c) Each of the Interested Parties covenants and represents that neither it nor any of its affiliates, subsidiaries, directors or officers will use any payments made pursuant to this Escrow Agreement, (i) to fund or facilitate any activities of or business with any person who, at the time of such funding or facilitation, is the subject or target of Sanctions, (ii) to fund or facilitate any activities of or business with any country or territory that is the target or subject of Sanctions, or (iii) in any other manner that will result in a violation of Sanctions by any person.

**16. Illegality, Etc.** The invalidity, illegality or unenforceability of any provision of this Escrow Agreement shall in no way affect the validity, legality or enforceability of any other provision; and if any provision is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

**17. Entire Agreement.** This Escrow Agreement shall constitute the entire agreement of the parties with respect to the subject matter and supersedes all prior oral or written agreements in regard thereto; provided that, with regards to matters other than the Escrow Agent's rights, duties and protections, that this Escrow Agreement shall not supersede the Underlying Agreement.

**18. Survival of Certain Provisions.** Sections II.8-9, II.12, II.18 and II.21-22 of this Escrow Agreement shall survive termination of this Escrow Agreement and the resignation or removal of the Escrow Agent.

**19. Headings.** The headings contained in this Escrow Agreement are for convenience of reference only and shall have no effect on the interpretation or operation hereof.

**20. Counterparts.** This Escrow Agreement may be executed by each of the parties hereto in any number of counterparts, each of which counterpart, when so executed and delivered, shall be deemed to be an original and all such counterparts shall together constitute one and the same agreement.

**21. Certain Tax Matters.** Except as provided in Section II.4(b) above, the Escrow Agent does not have any interest in the Escrow Property but is serving as escrow holder only and having only possession thereof. The Depositors and the Settlement Trust shall jointly and severally be obligated to and shall pay or reimburse the Escrow Agent from the Escrow Property or personally upon request for any transfer taxes or other taxes relating to the Escrow Property incurred in connection herewith and shall jointly and severally indemnify and hold harmless the Escrow Agent for any amounts that it is obligated to pay in the way of such taxes. Any payments of income from this Escrow Account shall be subject to withholding regulations then in force with respect to United States taxes. The parties hereto will provide the Escrow Agent with appropriate W-9 forms for tax I.D., number certifications, or W-8 forms for non-resident alien certifications, and will inform the Escrow Agent as to the proper allocation of income in respect of the Escrow Property for annual and periodic tax and other reporting purposes. It is understood that the Escrow Agent shall be responsible for income reporting only with respect to income earned on investment of funds which are a part of the Escrow Property and is not responsible for any other reporting.

**22. Patriot Act Compliance, Etc.** In order to comply with laws, rules, regulations and executive orders in effect from time to time applicable to banking institutions, including those relating to the funding of terrorist activities and money laundering and the Customer Identification Program ("CIP") requirements under the USA PATRIOT Act and its implementing regulations, pursuant to which the Escrow Agent must obtain, verify and record information that allows the Escrow Agent to identify customers ("Applicable Law"), the Escrow Agent is required to obtain, verify and record certain information relating to individuals and entities which maintain a business relationship with the Escrow Agent. Accordingly, each Interested Party agrees to provide to the Escrow Agent upon its request from time to time such identifying information and documentation as may be available for such party in order to enable the Escrow Agent to comply with Applicable Law, including, but not limited to, information as to name, physical address, tax identification number and other information that will help the Escrow Agent to identify and verify such Interested Party such as organizational documents, certificates of good standing, licenses to do business or other pertinent identifying information. Each Interested Party understands and agrees that the Escrow Agent cannot open the Escrow Account unless and until the Escrow Agent verifies the identities of the Interested Parties in accordance with its CIP.

**23. Shareholder Communication Act, Etc.** With respect to securities issued in the United States, the Shareholders Communications Act of 1985 (the "Act") requires Escrow Agent to disclose to the issuers, upon their request, the name, address and securities position of its Depositors who are (a) the "beneficial owners" (as defined in the Act) of the issuer's securities, if the beneficial owner does not object to such disclosure, or (b) acting as a "respondent bank" (as defined in the Act) with respect to the securities. Under the Act, "respondent banks" do not have the option of objecting to such disclosure upon the issuers' request. The Act defines a "beneficial owner" as any person who has, or shares, the power to vote a security (pursuant to an agreement or otherwise), or who directs the voting of a security. The Act defines a "respondent bank" as any bank, association or other entity that exercises fiduciary powers which holds securities on behalf of beneficial owners and deposits such securities for safekeeping with a bank, such as Escrow Agent. Under the Act, Depositors are either the "beneficial owner" or a "respondent

9

bank."

[**x**] Depositors are the "beneficial owner," as defined in the Act, of the securities to be held by Escrow Agent hereunder.
[ ] Depositors are not the beneficial owner of the securities to be held by Escrow Agent, but is acting as a "respondent bank," as defined in the Act, with respect to the securities to be held by Escrow Agent hereunder.

IF NO BOX IS CHECKED, ESCROW AGENT SHALL ASSUME THAT DEPOSITOR IS THE BENEFICIAL OWNER OF THE SECURITIES.

For beneficial owners of the securities only:
[**x**] Depositors object
[ ] Depositors do not object to the disclosure of its name, address and securities position to any issuer which requests such information pursuant to the Act for the specific purpose of direct communications between such issuer and Depositors.

IF NO BOX IS CHECKED, ESCROW AGENT SHALL RELEASE SUCH INFORMATION UNTIL IT RECEIVES A CONTRARY WRITTEN INSTRUCTION FROM DEPOSITORS.

With respect to securities issued outside of the United States, information shall be released to issuers only if required by law or regulation of the particular country in which the securities are located. The Depositors agree to disseminate in a timely manner any proxies or requests for voting instructions, other proxy soliciting material, information statements, and/or annual reports that it receives to any other beneficial owners.

      **24. Information Sharing.** The Bank of New York Mellon Corporation is a global financial organization that operates in and provides services and products to clients through its affiliates and subsidiaries located in multiple jurisdictions (the "BNY Mellon Group"). The BNY Mellon Group may (i) centralize in one or more affiliates and subsidiaries certain activities (the "Centralized Functions"), including audit, accounting, administration, risk management, legal, compliance, sales, product communication, relationship management, and the compilation and analysis of information and data regarding the Interested Parties (which, for purposes of this provision, includes the name and business contact information for the Interested Parties employees and representatives) and the accounts established pursuant to this Escrow Agreement ("Interested Parties Information") and (ii) use third party service providers to store, maintain and process the Interested Parties Information ("Outsourced Functions"). Notwithstanding anything to the contrary contained elsewhere in this Escrow Agreement and solely in connection with the Centralized Functions and Outsourced Functions, the Interested Parties consent to the disclosure of, and authorize BNY Mellon Group to disclose, the Interested Parties Information to (i) other members of the BNY Mellon Group (and their respective officers, directors and employees) and to (ii) third-party service providers (but solely in connection with Outsourced Functions) who are required to maintain the confidentiality of the Interested Parties Information. In addition, the BNY Mellon Group may aggregate the Interested Parties Information with other data collected and calculated by the BNY Mellon Group, and the BNY Mellon Group will own all such aggregated data, provided that the BNY Mellon Group shall not distribute the aggregated data in a format that identifies the Interested Parties Information with the Interested Parties specifically. The Interested Parties represent that the Interested Parties are authorized to consent to the foregoing and that the disclosure of the Interested Parties Information in connection with the Centralized Functions and Outsourced Functions does not violate any relevant data protection legislation.[1] The Interested Parties also consent to the disclosure of the Interested Parties Information to governmental and regulatory authorities in jurisdictions where the BNY Mellon Group operates and otherwise as required by law.

      **25. Successors, Assigns, and Mergers of Escrow Agent and BSA.** Any corporation or other company into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or other company resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any corporation or other company succeeding to the business of the Escrow Agent shall be the successor of the Escrow Agent hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto, except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding. Once the Confirmation Order becomes a Final

---

[1] This is for *aggregated* and *anonymized* data only.

Order, BSA may assign and novate any or all of its rights and obligations in this Escrow Agreement to the Settlement Trust without any prior written consent of any other party hereto, and all obligations of BSA hereunder shall cease and terminate.

11

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date first written above.

**THE BANK OF NEW YORK MELLON:**
as Escrow Agent

By: _Melissa Matthews_

Digitally signed by
Melissa Matthews
Date: 2023.04.19
11:40:35 -04'00'

Name: Melissa Matthews

**CLARENDON NATIONAL INSURANCE COMPANY**
**(as successor in interest by merger to Clarendon America**
**Insurance Company):**
as Depositors

By: _____

Name: Robert Redpath, Senior Vice President

**ZURICH AMERICAN INSURANCE COMPANY (as**
**successor in interest to Maryland Casualty Company,**
**Zurich Insurance Company and American General Fire &**
**Casualty Company):**
as Depositors

By: _____

Name: James B. Dolan, Jr., Senior Vice President, Group
Coverage Counsel of Enstar (US) Inc., authorized claims
administrator for Zurich American Insurance Company

12

**EXECUTION VERSION**

**IN WITNESS WHEREOF**, the parties hereto have executed this Escrow Agreement as of the date first written above.

**THE BANK OF NEW YORK MELLON:**
as Escrow Agent

By:

Name:

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:

Name: Robert Redpath, Senior Vice President

**ZURICH AMERICAN INSURANCE COMPANY (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:

Name: James B. Dolan, Jr., Senior Vice President, Group Coverage Counsel of Enstar (US) Inc., authorized claims administrator for Zurich American Insurance Company

12

**IN WITNESS WHEREOF**, the parties hereto have executed this Escrow Agreement as of the date first written above.

**THE BANK OF NEW YORK MELLON:**
as Escrow Agent


By: _____

Name: _____


**CLARENDON NATIONAL INSURANCE COMPANY
(as successor in interest by merger to Clarendon America
Insurance Company):**
as Depositors


By: _____

Name: Robert Redpath, Senior Vice President


**ZURICH AMERICAN INSURANCE COMPANY (as
successor in interest to Maryland Casualty Company,
Zurich Insurance Company and American General Fire &
Casualty Company):**
as Depositors


By: _____

Name: James B. Dolan, Jr., Senior Vice President, Group
Coverage Counsel of Enstar (US) Inc., authorized claims
administrator for Zurich American Insurance Company

12

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____

Name: Roger C. Mosby

By: _____

Name: Michael A. Ashline

**DELAWARE BSA, LLC**

By: _____

Name: Roger C. Mosby

By: _____

Name: Michael A. Ashline

**Annex A – Notice and Joinder of the Settlement Trust**

To: THE BANK OF NEW YORK MELLON

Ladies and Gentlemen:

This Notice is made and delivered pursuant to that certain Escrow Agreement, dated as of April 20, 2023 (the "Effective Date"), by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"), Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company) and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company), as depositors (collectively, the "Depositors"), the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA," the Depositors and BSA are also individually referred to herein as an "Interested Party" and, collectively the "Interested Parties"). All capitalized terms used in this notice and not otherwise defined herein shall have the meanings assigned to them in the Escrow Agreement.

The Depositors and the BSA hereby notify the Escrow Agent that they intend to designate the BSA Settlement Trust (the "Settlement Trust") as an additional party to the Escrow Agreement and an "Interested Party" on or after the Effective Date upon execution of this notice and subject to compliance with other terms and conditions specified under the Escrow Agreement. Attached hereto as **Schedule A to the Joinder** is the incumbency certificate of the Settlement Trust which shall be added to Schedule IV of the Escrow Agreement. By execution of this Notice and Joinder, the Settlement Trust hereby joins as an additional party to the Escrow Agreement and an "Interested Party" thereunder and shall be bound as a Party to the Escrow Agreement and all terms, conditions, obligations, and provisions thereof.

[SIGNATURE PAGES FOLLOW]

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:

Name: Robert Redpath, Senior Vice President

**ZURICH AMERICAN INSURANCE COMPANY (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:

Name: James B. Dolan, Jr., Senior Vice President, Group Coverage Counsel of Enstar (US) Inc., authorized claims administrator for Zurich American Insurance Company

**BSA:**
**BOY SCOUTS OF AMERICA**

By:

Name:

**DELAWARE BSA, LLC**

By:

Name:

**SETTLEMENT TRUST:**

By:

Name:

2

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:_____
Name:

**ZURICH AMERICAN INSURANCE Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:_____
Name:

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline

**DELAWARE BSA, LLC**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline

*[Signature Page to Clarendon Notice and Joinder of the Settlement Trust]*

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors


By: _____
Name:


**ZURICH AMERICAN INSURANCE Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors


By: _____
Name:


**BSA:**
**BOY SCOUTS OF AMERICA**


By: _____
Name: _____


**DELAWARE BSA, LLC**


By: _____

Name:


**SETTLEMENT TRUST:**


By: _____
Name**:**  Hon. Barbara J. Houser (Ret.)
Title: Trustee


Signature Page to Clarendon Annex A - Notice of Joinder

**Schedule A to the Joinder**

**Incumbency Certificate**
**to be added to Schedule IV of the Escrow Agreement**

## INCUMBENCY CERTIFICATE/ AUTHORIZED CALLBACKS

The undersigned, ___Hon. Barbara J. Houser (Ret.)___ being the ___Trustee___
(name of Authorized Company Officer)        (title)

of ___BSA Settlement Trust___ (the "Company")

does hereby certify that (1) the individuals listed below are qualified and acting officers of the Company, (2) the signature appearing opposite the name of each such officer is a true specimen of the genuine signature of such officer, and (3) such individuals have the authority to provide written direction/ confirmation and receive callbacks at the phone number(s) noted below and execute documents to be delivered to, or upon the request of The Bank of New York Mellon and/or The Bank of New York Mellon Trust Company, N. A. (collectively, "BNY Mellon"). BNY Mellon may rely conclusively upon the certification of authority of the officers named in this Certificate in connection with all corporate trust transactions to which the Company is a party with BNY Mellon until such time as the Company (i) expressly revokes this Certificate in writing or (ii) provides a revised Certificate; in order to be effective, either must be delivered to BNY Mellon at the addresses provided in the related governing documents.

| Name | Title | Signature | Phone Number for Callback | Cell Phone Number for Callback |
|------|-------|-----------|---------------------------|-------------------------------|
| Hon. Barbara J. Houser (Ret.) | Trustee | *Barbara J Houser* | ▮▮▮▮▮▮▮ | N/A |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this certificate as of April 12, 2023.

*Barbara J. Houser, Trustee*
(Authorized Company Officer signature*)

*Note that the Authorized Company Officer cannot be listed as an authorized signer above unless the governing documents establish the **Authorized Company Officer's** authority to give instructions and this Incumbency Certificate, showing the signature and phone number, is notarized

V5 1120

## SCHEDULE I
### INVESTMENT GUIDELINES

**Initial Guidelines:**  The Escrow Amount may be invested or reinvested in any of the following:

I.       Default Investment

In accordance with Section I.2(c) of the Escrow Agreement, in the absence of written instructions from the Settlement Trust as to investment of the Escrow Property, the Escrow Agent will invest such Escrow Property in the fund specified in paragraph 1 immediately below (or, if the Escrow Agent is unable to invest the Escrow Property in such fund, then the Escrow Agent will invest such Escrow Property in the alternate fund specified in paragraph 2 immediately below) (such fund, as applicable, the "Default Investment"):

1.  Dreyfus Treas Secs Cash Mgmt/Inst

2.  BlackRock Liquidity: Treas Tr Inst

II.      Investment Guidelines for Any Settlement Trust Instructions on Investment or Reinvestment

In accordance with Section I.2(a) of the Escrow Agreement, if the Settlement Trust provides written instructions as to the investment or reinvestment of the Escrow Property, the Escrow Agent shall invest or reinvest the Escrow Property in accordance with such instructions only if the instructions provide for investment or reinvestment of the Escrow Property (i) in such investments that the Escrow Agent is able to hold; and (ii) such investment or reinvestment is in accordance with the following investment guidelines (the "Investment Guidelines", and the requirements set forth in (i) and (ii) of this sentence, the "Permitted Investment Requirements"):

The Escrow Property may be invested in any of the permitted investments set forth in paragraphs 1, 2, or 3 below, provided that the overall portfolio shall have a weighted average maturity at 60 days.

1.  United States-Direct Obligations (*e.g.*, Treasury Bills, Notes and Bonds).  Any United States direct obligation that has a maturity of not more than 2 years from the date of purchase.

2.  United States Government Agencies and Instrumentalities-Direct or Indirect Obligations (e.g., notes issued by the Federal Home Loan Bank and Federal National Mortgage Association).  Any United States government agency or instrumentality direct or indirect obligations that has a maturity of not more than 2 years from the date of purchase.

3.  Money Market Mutual Funds: money market mutual or similar funds that invest in assets satisfying the requirements of clauses (1) through (2) above.

In the absence of written instructions from the Settlement Trust, the Escrow Agent shall invest such uninvested portion of the Escrow Property in the Default Investment in accordance with paragraph I of this Schedule I).

Escrow Agent notice address:              Filippo (Phil) Triolo
                                          Vice President
                                          BNY Mellon Corporate Trust
                                          Specialty Products - Escrow Services
                                          385 Rifle Camp Road
                                          Garret Tower
                                          Woodland Park, NJ 07424

EXECUTION VERSION

**SCHEDULE II**
**Notices**

| | |
|---|---|
| BSA's notice address: | Joseph Zirkman (General Counsel)<br>Boy Scouts of America<br>1325 West Walnut Hill Lane<br>Irving, TX 75038<br>Email: joseph.zirkman@scouting.org |
| with a copy to: | Jessica C. Lauria, Esq.<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Email: jessica.lauria@whitecase.com<br>Phone:  212 819 8200<br><br>-and-<br><br>Derek C. Abbott, Esq.<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 N. Market St., 16th Floor, P.O. Box 1347<br>Wilmington, DW 19899-1347<br>Email: dabbott@morrisnichols.com<br>Phone:  302 658 9200 |
| The Depositors' notice address: | Robert Redpath<br>James B. Dolan, Jr., Esq.<br>Enstar (US) Inc.<br>150 Second Avenue North, 3rd Floor<br>St. Petersburg, FL 33701-3327<br>Email: Robert.Redpath@enstargroup.com<br>        James.Dolan@enstargroup.com<br>Phone: 727 217 2900 |
| with a copy to: | Harry Lee, Esq.<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Email: hltt@steptoe.com<br>Phone: 202 429 8112 |
| Settlement Trustee's notice address: | Hon. Barbara J. Houser (Ret.)<br>c/o Pachulski, Stang, Ziehl & Jones<br>919 North Market Street, 17th Floor<br>Wilmington, DE 19801<br>trustee@scoutingsettlementtrust.com |
| with a copy to: | David J. Molton, Esq; Barbara J. Kelly, Esq.<br>Brown Rudnick, LLP<br>7 Times Square<br>New York, NY 10036<br>Email:  dlmolton@brownrudnick.com;<br>bkelly@brownrudnick.com |

2

**EXECUTION VERSION**

-and-
Richard M. Pachulski, Esq.
Debra Grassgreen, Esq.
John Lucas, Esq.
Pachulski, Stang, Ziehl & Jones, LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Email:  rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

The Escrow Agent's notice address:

Filippo (Phil) Triolo
Vice President
BNY Mellon Corporate Trust
Specialty Products - Escrow Services
385 Rifle Camp Road
Garret Tower
Woodland Park, NJ 07424
Phone:  212 815 3229
filippo.triolo@bnymellon.com

3

**SCHEDULE III**

Telephone Number(s) for Call-Backs and
Person(s) Designated to Confirm Funds Transfer Instructions

For BSA:

    Michael Ashline
    Boy Scouts of America            704-904-6847

For Depositors:

    Cerea Jerideau
    Enstar (US) Inc.            803-462-7474

    Patrick Shea            614-214-0736
    Allianz Resolution Management, as authorized claims administrator for Zurich American
    Insurance Co.

For the Settlement Trust:

    [Name]            Telephone Number

    Telephone call-backs shall be made to each appropriate party if more than one party's instructions are required pursuant to this Escrow Agreement.

**Schedule IV**

Authorized Officers of Depositors

| Name | Signature | Phone Number |
|------|-----------|--------------|
| Robert Redpath | *[signature]* | 727-217-2900 |
| James B. Dolan, Jr. | *[signature]* | 727-217-2900 |

Authorized Officers of BSA

| Name | Signature | Phone Number |
|------|-----------|--------------|
| Roger Mosby | | (936) 235-6353 |
| Joseph Zirkman | | (315) 427-2914 |
| Michael Ashline | | (704) 904-6847 |

## Schedule IV

### Authorized Officers of Depositors

| Name | Signature | Phone Number |
|------|-----------|--------------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

### Authorized Officers of BSA

| Name | Signature | Phone Number |
|------|-----------|--------------|
| Roger C. Mosby | | (936) 235-6353 |
| Joseph A. Zirkman | | (315) 427-2914 |
| Michael A. Ashline | | (704) 904-6847 |

## Schedule V

**ELECTRONIC METHODS AUTHORIZATION, LIMITATION OF LIABILITY AND INDEMNITY**

**Interested Party Authorization, Limitation of Liability and Indemnity.**  Each Interested Party hereby authorizes the Escrow Agent and its affiliates (the "Bank") to rely upon and comply with instructions and directions sent by it via Electronic Means by persons believed by the Bank to be authorized to give instructions and directions on behalf of the Interested Party.  Except as set forth below with respect to funds transfers, the Bank shall have no duty or obligation to verify or confirm that the person who sent such instructions or directions is, in fact, a person authorized to give instructions or directions on behalf of the Interested Party (other than to verify that the signature on a facsimile is the signature of a person authorized to give instructions and directions on behalf of the Interested Party); and the Bank shall have no liability for any losses, liabilities, costs or expenses incurred or sustained by the relevant Interested Party as a result of such reliance upon or compliance with such instructions or directions.  Each Interested Party agrees to assume all risks arising out of the use of Electronic Means to submit instructions and directions to the Bank, including without limitation the risk of the Bank acting on unauthorized instructions, and the risk of interception and misuse by third parties.

If an Interested Party elects to give the Escrow Agent instructions and directions using Electronic Means and the Escrow Agent in its discretion elects to act upon such instructions or directions, the Escrow Agent's understanding of such instructions and directions shall be deemed controlling.  Each of the Interest Parties understand and agree that the Escrow Agent cannot determine the identity of the actual sender of such instructions and directions and that the Escrow Agent shall conclusively presume, following compliance with the security procedures set forth below, that directions that purport to have been sent by an Authorized Person listed on the incumbency certificate provided to the Escrow Agent have been sent by such Authorized Person.  Each of the Interested Parties shall be responsible for ensuring that only Authorized Persons transmit such instructions and directions to the Escrow Agent and that each of the Interested Parties and all Authorized Persons are solely responsible to safeguard the use and confidentiality of applicable user and authorization codes, passwords and/or authentication keys upon receipt by the Interested Parties.  The Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Escrow Agent's good faith reliance upon and compliance with such instructions and directions notwithstanding such directions conflict or are inconsistent with a subsequent written instruction.

Each of the Interested Parties agrees: (i) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions and directions to the Escrow Agent and that there may be more secure methods of transmitting instructions and directions than the method(s) selected by the Interested Parties; (ii) that the security procedures (if any) to be followed in connection with its transmission of instructions and directions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iii) to notify the Escrow Agent immediately upon learning of any compromise or unauthorized use of the security procedures.

**Funds Transfer Security Procedures**.  With respect to any "funds transfer," as defined in Article 4-A of the Uniform Commercial Code, the Escrow Agent shall apply the following security procedure unless an Interested Party utilizes a Secure Platform to send instructions and directions to the Escrow Agent or an alternative authentication method has been selected by the relevant Interested Party:  An Interested Party's payment instruction is to include the name and (in the case of a facsimile) signature of the person initiating the funds transfer request.  If the name is listed as an Authorized Person on a certificate in the form of Schedule IV hereto delivered pursuant to the Escrow Agreement, the Bank will confirm the instructions by telephone call to any person listed as an Authorized Person, who may be the same person who initiated the instruction.  When calling back, the Bank will request from the relevant Interested Party's staff member his or her name.  If the name is listed in the Escrow Agent's records as an Authorized Person, the Bank will confirm the instructions with respect to amount, names and numbers of accounts to be charged or credited and other relevant reference information.  Where the Escrow Agreement contemplates joint payment instructions from the interested parties, the Escrow Agent shall call back both the Depositors and BSA.  Each Interested Party acknowledges that the Bank has offered such Interested Party other security procedures that are more secure and are commercially reasonable for such Interested Party, and that such Interested Party has nonetheless chosen the procedures described in this paragraph.  Each Interested Party agrees to be bound by any payment order issued in its name, whether or not authorized, that is accepted by the Bank in accordance with the above procedures.  When instructed to credit or pay a party by both name and a unique

numeric or alpha-numeric identifier (e.g., ABA number or account number), the Bank, and any other bank participating in the funds transfer, may, in good faith, rely solely on the unique identifier, even if it identifies a party different than the party named.  This applies to beneficiaries as well as any intermediary bank.  Each Interested Party agrees to be bound by the rules of any funds transfer network used in connection with any payment order accepted by the Bank hereunder.  The Escrow Agent shall not be obliged to make any payment or otherwise to act on any instruction notified to it under this Escrow Agreement if it is unable to validate the authenticity of the request by telephoning an Authorized Person who has not executed the relevant request or instruction of the relevant Interested Party.  Payment or otherwise to act on any instruction by Authorized Person of the relevant Interested Party will be made by the Escrow Agent within three (3) Business Days (as defined in Section II.6) after Escrow Agent's verification of instructions as set forth above.

**Authorization**.  This authorization shall remain in full force and effect until the earlier of termination of this Escrow Agreement or the date it is canceled, revoked or amended by written notice received by the Escrow Agent; and replaces and supersedes any previous authorization from an Interested Party to the Bank relating to the giving of instructions by Electronic Means in relation to this Escrow Agreement, and is in addition to all other authorizations.  Notwithstanding any revocation, cancellation or amendment of this authorization, any action taken by the Bank pursuant to this authorization prior to the Bank's actual receipt and acknowledgement of a notice of revocation, cancellation or amendment shall not be affected by such notice.

**Indemnity**.  The Depositors and the Settlement Trust, jointly and severally, agree to indemnify personally and from the Escrow Property and hold harmless the Bank against any and all claims, losses, damages liabilities, judgments, costs and expenses (including reasonable attorneys' fees) (collectively, "Losses") incurred or sustained by the Bank as a result of or in connection with the Bank's reliance upon and compliance with instructions or directions given by such Interested Party by Electronic Means in accordance with this Escrow Agreement, provided, however, that such Losses have not arisen from the gross negligence or willful misconduct of the Bank, it being understood that the good-faith failure of the Bank to verify or confirm that the person giving the instructions or directions, is, in fact, an Authorized Person does not constitute gross negligence or willful misconduct.

**Representation**.  Each Interested Party hereby represents and warrants to the Bank that this authorization is properly given and has been duly approved by a resolution of its respective governing body.

**EXHIBIT A**

FUNDS DISBURSEMENT TO SETTLEMENT TRUST INSTRUCTION

This Funds Disbursement Instruction is executed and delivered pursuant to the Escrow Agreement dated as of _____, 2023 (the "Escrow Agreement") by and among The Bank of New York Mellon, a New York banking corporation (the "Escrow Agent"), Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company) and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company), as depositors (each a "Depositor" and, collectively, the "Depositors"), the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "BSA") and the Settlement Trust.

Depositors hereby acknowledge that a disbursement is to occur at: [time of the Release Date] (the "Release Date").

Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositors hereby irrevocably instruct Escrow Agent to (i) pay all fees of the Escrow Agent in the amount of $_____ and to its counsel in the amount of $[_____] (the "Escrow Fees"), and (ii) release all remaining balance of the Escrow Property of $_____ (the "Disbursement Amount") to the Settlement Trust as set forth in the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [D.I. 10296] (the "Plan") in accordance with the following wiring instruction:

[Bank name]
[Routing number]
[Account number]

The Settlement Trust and the Depositors consent to the payment of the Escrow Fees in the preceding paragraph.

[SIGNATURE PAGES FOLLOW]

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By: _____
Name: Robert Redpath, Senior Vice President

**ZURICH AMERICAN INSURANCE COMPANY (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By: _____
Name: James B. Dolan, Jr., Senior Vice President, Group Coverage Counsel of Enstar (US) Inc., authorized claims administrator for Zurich American Insurance Company

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____
Name:

**DELAWARE BSA, LLC**

By: _____

Name:

**SETTLEMENT TRUST:**

By: _____
Name:

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:_____
Name:

**ZURICH AMERICAN INSURANCE Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:_____
Name:

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline

**DELAWARE BSA, LLC**

By: _____
Name: Roger C. Mosby

By: _____
Name: Michael A. Ashline

*[Signature Page to Clarendon Funds Disbursement To Settlement Trust Instruction]*

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:_____
Name:

**ZURICH AMERICAN INSURANCE Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:_____
Name:

**BSA:**
**BOY SCOUTS OF AMERICA**

By: _____

Name:

**DELAWARE BSA, LLC**

By: _____

Name:

**SETTLEMENT TRUST:**

By: _____
Name: Hon. Barbara J. Houser (Ret.)
Title:  Trustee

Signature Page to Clarendon Exhibit A - Funds Disbursement

**EXHIBIT B**

FUNDS DISBURSEMENT TO DEPOSITORS INSTRUCTION

This Funds Disbursement Instruction is executed and delivered pursuant to the Escrow Agreement dated as of _____, 2023 (the "<u>Escrow Agreement</u>"), by and among The Bank of New York Mellon, a New York banking corporation (the "<u>Escrow Agent</u>"), Clarendon National Insurance Company (as successor in interest by merger to Clarendon America Insurance Company) and Zurich American Insurance Company (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company), as depositors (each a "<u>Depositor</u>" and, collectively, the "<u>Depositors</u>"), the Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession (together, "<u>BSA</u>"), and the Settlement Trust.

Depositors hereby certify that the following event(s) has occurred: [●].[2]

Depositors hereby acknowledge that a disbursement is to occur at: [●].

Accordingly, and subject to the terms and conditions of the Escrow Agreement, Depositors hereby irrevocably instruct Escrow Agent to transfer $_____ (the "<u>Disbursement Amount</u>") to Depositors in accordance with the following wiring instruction:

[Bank name]
[Routing number]
[Account number]

[SIGNATURE PAGES FOLLOW]

---

[2] NTD: Blank to contain anyone or more of the following events:

(i)        the District Court does not enter the Affirmation Order within 360 days after the entry of the Confirmation Order by the Bankruptcy Court, or the District Court declines to enter the Affirmation Order (whether or not such denial constitutes a reversal or remand);

(ii)       the withdrawal of the Plan;

(iii)      the failure of the Plan to conform to the Underlying Agreement;

(iv)      a Reversal (as such term is defined in the Underlying Agreement);

(v)       the conversion to chapter 7 or the dismissal of BSA's chapter 11 cases;

(vi)      the agreement in writing of the Interested Parties terminating this Escrow Agreement; or

(vii)     entry of an order of the Bankruptcy Court or District Court directing the termination of the Escrow Agreement or disbursement of the Escrow Property to the Depositor.

**CLARENDON NATIONAL INSURANCE COMPANY (as successor in interest by merger to Clarendon America Insurance Company):**
as Depositors

By:_____
Name: Robert Redpath, Senior Vice President

**ZURICH AMERICAN INSURANCE COMPANY (as successor in interest to Maryland Casualty Company, Zurich Insurance Company and American General Fire & Casualty Company):**
as Depositors

By:_____
Name: James B. Dolan, Jr., Senior Vice President, Group Coverage Counsel of Enstar (US) Inc., authorized claims administrator for Zurich American Insurance Company

CC:   BSA
      Settlement Trust